[No. G013566. Fourth Dist., Div. Three. Mar. 16, 1994.]

MAIN & VON KARMAN ASSOCIATES, Plaintiff and Appellant, v. COUNTY OF ORANGE, Defendant and Respondent.

338

## COUNSEL

Weil & Wright and Archie T. Wright III for Plaintiff and Appellant.

Terry C. Andrus, County Counsel, and Thomas C. Agin, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**SILLS, P. J.**—Plaintiff Main & Von Karman Associates (M&VK) appeals from a judgment denying its claim for refund of real property taxes. Because the county assessor failed to follow the mandatory provisions of rule 4 of the State Board of Equalization (Cal. Code Regs., tit. 18, § 4) in using the comparable sales approach to value in calculating the fair market value of the properties, we reverse.

### FACTS

M&VK is the owner of two commercial properties in Irvine that lie adjacent to one another. The "Main Street parcel" consists of a commercial building and land located at 2300 Main Street. It was purchased on December 31, 1985, for $9,625,000. The "Von Karman parcel" consists of an office building and land located at 17900 Von Karman Avenue. It was purchased the same day for $8,222,290. At the time of the sales, Western Digital Corporation was leasing both properties at a net rate of 95 cents per square foot.

The county assessor assessed the parcels as of December 31, 1985, at an amount equal to their purchase price. As permitted by section 2 of article XIII A of the California Constitution (commonly known as Proposition 13), the assessor increased the assessments on each parcel by 2 percent per year. As of the March 1, 1989, lien date, the enrolled value of the Main Street parcel was $10,408,763, and the enrolled value of the Von Karman parcel was $8,728,465.

M&VK appealed the 1989 assessments, claiming that the Main Street parcel should have been assessed at $7.4 million and the Von Karman parcel should have been assessed at $5.6 million. An administrative hearing was held before Assessment Appeals Board No. 1 for the County of Orange (the AAB). Experts for M&VK, relying on the income approach to value, testified that there was a general oversupply of office space in the market, that a recent city zoning ordinance had severely limited the use of the properties, and that the buildings on the properties were now vacant. In addition, M&VK's experts stated that the prices for office space in the Irvine area had recently declined to 70 to 75 cents per square foot triple net as larger businesses emigrated to the southern part of the county. Applying guidelines established by state statutes for the income approach to value, M&VK's experts opined that the value of the properties on the 1989 lien date was $13 million.

The county assessor, on the other hand, used the comparable sales method to value the properties. He introduced into evidence sales of other land in Irvine by passing around a handwritten sheet showing the sale amount, zone, and location of these properties. He extrapolated from this data a market rate of 95 cents a square foot triple net for the Main Street parcel, and $1.20 a square foot triple net for the Von Karman parcel. On the basis of these rates, the assessor appraised the subject properties on the 1989 lien date at a little over $19 million.

M&VK objected to the use of these comparable sales on the ground that the assessor had failed to make adjustments to the sales data to reflect the differences between the subject properties and the comparable sales, as required by rule 4 of the State Board of Equalization, and on the ground that much of the information as to these sales was incorrect. M&VK's experts testified, for example, that on one sale the selling broker advised them that the property had never leased at 95 cents a square foot as stated by the assessor, and that on another sale, the selling broker advised them the lease was 75 cents a square foot, and not 95 cents a square foot as listed by the assessor. Other comparables involved either substantially newer construction (e.g., 1986, 1987), different markets (e.g., Mission Viejo), different types of

leases (e.g., full service gross), or were financing transactions that did not reflect the fair market value of the properties. In addition, M&VK pointed out that none of the assessor's comparable sales recognized concessions, such as free rent for the initial lease period, which would have to be made to attract new tenants.

The assessor admitted that no adjustments had been made, but offered two excuses. First, he explained that the State Board of Equalization rules were merely "guidelines" which the assessor was not required to follow, and his valuations fell within the general range of the comparable sales. He stated that, "what is happening in my comps is that I selected the comps in general area, in general time frame, in general use and age and size and quality rather than list a group of mathematical adjustments, I'm letting them unadjusted rank as superiors, inferiors, equals if you will, so that it can be seen by looking at them that our assessment falls well within the range of what they indicate," and that, "I haven't made adjustments on these comparables as a separate step, and I've explained that I am showing the range of the comparables for a reasonable amount to look at the description of the properties and the information. You see that they well support the assessed value which is below any indicators, and therefore did not feel that it was necessary to go step by step through a lot of elaborate mathematical adjustments."

Second, the assessor blamed the budgetary constraints placed on his office by Proposition 13. "Petitioner is objecting to . . . a way that Assessor has done it for a long time, and really a way that has been established and is necessary because we really are not under the Prop 13 limitations in budget. We're not in a position to do a lot more sophisticated in large volume. We should be able to cost a lot more money to operate the Assessor's office. The sales of the area are extremely abundant. Whether or not they have the niceties of all being non-exchanges, or identical comps, or near in location, these all have similar uses. The age range is not that bad, the sizes are different, but the indicators that the Assessor's using is so much a square foot, so that adjusts to some degree for the size. We feel that there's ample comparable sales that show not a specific value, but a value above that which is on the assessment roll, which is all we feel we needed to show."

The AAB took the matter under submission. In its written findings of fact, the AAB dismissed much of M&VK's evidence as irrelevant, overruled its objection to the assessor's comparables, and rejected its evidence of value under the income approach to value. The AAB determined that the most reliable method of valuation is the comparable sales approach. Relying on the sales presented by the assessor, the AAB concluded that the fair market

value of the Main Street parcel was $116 per square foot, and the fair market value of the Von Karman parcel was $144 per square foot. These values were then reduced by "approximately 20 percent, to account for any reduction in value in the subject properties due to vacancy rates and/or lower rental rates, resulting from overbuilding in the area." Following this reduction, the AAB reassessed the Main Street parcel at $9.5 million, and the Von Karman parcel at $7.73 million.[1]

M&VK filed a petition for writ of mandate for refund of taxes paid. The superior court denied the petition, and M&VK appeals.

## Discussion

M&VK contends that the county assessor failed to make the adjustments to the comparable sales data as required by rule 4 of the State Board of Equalization (Cal. Code Regs., tit. 18, § 4) before submitting the evidence to the AAB. Because the contention goes to the *methodology* used (i.e., that the assessor violated the standards prescribed by law), the appeal presents a question of law. (*Bret Harte Inn, Inc.* v. *City and County of San Francisco* (1976) 16 Cal.3d 14, 23 [127 Cal.Rptr. 154, 544 P.2d 1354]; *County of Orange* v. *Orange County Assessment Appeals Bd.* (1993) 13 Cal.App.4th 524, 529 [16 Cal.Rptr.2d 695]; see also *County of Stanislaus* v. *Assessment Appeals Bd.* (1989) 213 Cal.App.3d 1445, 1450 [262 Cal.Rptr. 439]; *Prudential Ins. Co.* v. *City and County of San Francisco* (1987) 191 Cal.App.3d 1142, 1149 [236 Cal.Rptr. 869]; *Jones* v. *County of Los Angeles* (1981) 114 Cal.App.3d 999, 1006 [170 Cal.Rptr. 879]; *Dressler v. County of Alpine* (1976) 64 Cal.App.3d 557, 566 [134 Cal.Rptr. 554]; *Midstate Theatres, Inc.* v. *County of Stanislaus* (1976) 55 Cal.App.3d 864, 880-881 [128 Cal.Rptr. 54]; cf. *Union Pacific Railroad Co.* v. *State Bd. of Equalization* (1991) 231 Cal.App.3d 983, 992 [282 Cal.Rptr. 745].)

Rule 4 of the State Board of Equalization provides, in relevant part, that when the assessor uses the comparable sales method, the assessor *shall* correct noncash sale prices to their cash equivalent, and make other adjustments appropriate for such things as differences in physical attributes of the properties, differences in location, and the income which the properties are expected to produce. (Cal. Code Regs., tit. 18, § 4, subds. (a) & (d).)[2] The rule requires that each comparable sale be adjusted according to the Code of

---

[1] There is actually a conflict in the AAB's assessment figures. At paragraph 14 of the written findings of fact, the Von Karman parcel is assessed at $7.33 million; however, in the "Decision" section it is assessed at $7.73 million.

[2] Rule 4 provides in pertinent part: "§ 4. The Comparative Sales Approach to Value. [¶] When reliable market data are available with respect to a given real property, the preferred method of valuation is by reference to sales prices. In using sales prices of the appraisal

Regulations to ensure statewide uniformity in appraisal practices (*Xerox Corp.* v. *County of Orange* (1977) 66 Cal.App.3d 746, 753 [136 Cal.Rptr. 583]), and to assure that the property is assessed at its full value (Rev. & Tax. Code, § 401.5). County assessors have on occasion attempted to circumvent the rule by making "overall adjustments" to the comparable sales (see, e.g., *Midstate Theatres, Inc.* v. *County of Stanislaus, supra,* 55 Cal.App.3d at pp. 880-881), or by using a "range of values" established by the market (see, e.g., *Dressler* v. *County of Alpine, supra,* 64 Cal.App.3d at p. 569, fn. 6), but in each of these cases in which a shortcut method was used, the appellate courts held rule 4 was mandatory and must be strictly followed in order to provide the assessment appeals board with an evidentiary foundation for its assessment. (See, e.g., *Prudential Ins. Co.* v. *City and County of San Francisco, supra,* 191 Cal.App.3d at p. 1149.) We see no reason to depart from this interpretation.

Here, the county assessor conceded he did not follow the requirements of rule 4. He mistakenly referred to them as "guidelines," and attempted to excuse the failure to comply with the rule by asserting that the assessor's office had never completed more detailed analyses of comparable sales, and that with the advent of the budgetary restrictions imposed by Proposition 13 the assessor's office was simply unable to comply with the rule. None of these excuses is sufficient to relieve the assessor of his obligation to make adjustments to the raw data before presenting the comparable sales as evidence to the AAB. The assessor's approach of merely giving the AAB the raw data and stating that the assessor's opinion was within the "range of values" shown by the data does not comport with the rule. As the Court of Appeal emphasized in a similar case, "The basic problem with the assessor's approach is that in practical terms it emasculates rule 4. Such an approach does not square with the spirit of rule 4 which carefully lists specific adjustments that are to be made, nor with the reasoning of the state board's general appraisal manual which states that, 'Each adjustment should receive separate and serious consideration' (Assessor's Handbook AH 501-102)." (*Midstate Theatres, Inc.* v. *County of Stanislaus, supra,* 55 Cal.App.3d at p. 881.)

---

subject or of comparable properties to value a property, the assessor shall: [¶] (a) Convert a noncash sale price to its cash equivalent by estimating the value in cash of any tangible or intangible property other than cash which the seller accepted in full or partial payment for the subject property and adding it to the cash portion of the sale price and by deducting from the nominal sale price any amount which the seller paid in lieu of interest to a lender who supplied the grantee with part or all of the purchase money. . . . [¶] (d) Make such allowances as he deems appropriate for differences between a comparable property at the time of sale and the subject property on the valuation date, in physical attributes of the properties, location of the properties, legally enforceable restrictions on the properties' use, and the income and amenities which the properties are expected to produce. . . ."

Moreover, M&VK's experts pointed out glaring errors in the data on which the assessor was relying (e.g., actual rental rates of 75 cents per square foot as opposed to rates of 95 cents per square foot), which would have been corrected had the assessor done the work necessary to make the adjustments required by the rule. The experts also noted substantial differences between the comparable sales and the subject properties (e.g., age, size, location, zoning), which necessarily would have been factored into the assessor's opinion of value had he followed the rule. Permitting the assessor to submit information to the AAB that is patently incomplete would defeat the purposes of the rule: the assessment of the property at the proper full market value, and the securing of uniformity in assessments throughout the state. (*Prudential Ins. Co.* v. *City and County of San Francisco, supra,* 191 Cal.App.3d at p. 1153.)

The failure of the assessor to follow rule 4 requires reversal of the AAB's decision since the fair market value of the properties as determined by the AAB was based on evidence which was legally incompetent. However, we cannot, as M&VK asks, direct the AAB to accept M&VK's evidence or method of value. The comparable sales approach is the preferred method, and simply because "substantial evidence of comparability was not produced at the county board hearing does not mean that none is available." (*Dressler* v. *County of Alpine, supra,* 64 Cal.App.3d at p. 571.) Remanding the matter to the AAB for further hearings, to be completed according to the standards prescribed by law, is the proper remedy.

### DISPOSITION

The judgment is reversed and the matter remanded to the trial court with directions to issue a peremptory writ of mandate commanding the AAB to conduct further hearings on M&VK's request for refund of property taxes. M&VK shall recover its costs on appeal. In addition, M&VK's request for an award of attorney fees (Gov. Code, § 800, Rev. & Tax. Code, §§ 538 & 5152) is transferred to the trial court for consideration in light of this opinion. (See *Phillips Petroleum Co.* v. *County of Lake* (1993) 15 Cal.App.4th 180, 196-198 [18 Cal.Rptr.2d 765]; *Prudential Ins. Co.* v. *City and County of San Francisco, supra,* 191 Cal.App.3d at pp. 1156-1161.)

Wallin, J., and Moore, J., concurred.