Opinion
 

 NOTT, J.
 

 Joseph N. Mitchell, as trustee for the Mitchell Family Trust, applied for a reduction in property taxes. The assessment appeals board (the AAB) denied the application. The superior court affirmed the AAB and entered judgment in favor of respondent County of Los Angeles (the County). We reverse the judgment for the reason the County failed to comply with the appropriate rules for an appraisal that involves an analysis based on comparable sales.
 

 Factual Overview
 

 The property involved in this matter is a single-family residence in Beverly Hills, consisting of an 8,287-square-foot home sitting on a 45,652-square-foot parcel of land. Improvements include a swimming pool and spa.
 

 Appellant bought the property in November of 1985 for $2,550,000, and in the next year, made approximately $500,000 in improvements. Based on the sales price, the improvements, and the annual increases allowed by Proposition 13 (Cal. Const., art. XIII A, § 2), the property was appraised at $3,509,900 in 1993, which translates to an improved value of $424 per square foot.
 
 [1]
 

 Appellant paid the taxes for 1993, and then filed an application for a reduced assessment. At the hearing before the AAB, appellant’s expert
 
 *500
 
 testified that the value of the property should be reduced to $3,025,000. The County presented evidence that the appraised value should remain where it is. The AAB agreed with the County. Appellant then brought an action for a refund. The trial court found that the County had presented admissible evidence to the AAB, and that there was substantial evidence to support the AAB’s decision. The trial court thereafter entered judgment for the County.
 

 Contentions on Appeal
 

 Appellant contends that (1) the County’s evidence of valuation was legally incompetent, and (2) there was no substantial evidence to support the AAB’s findings.
 

 Discussion
 

 1.
 
 Standard of Review
 

 The primary issue on appeal involves a question of law, to wit, whether the assessor failed to comply with State Board of Equalization rules requiring adjustments to comparable sales data. We therefore review the matter de novo.
 
 (Main & Von Karman Associates
 
 v.
 
 County of Orange
 
 (1994) 23 Cal.App.4th 337, 342 [28 Cal.Rptr.2d 432] (hereafter
 
 Main & Von Karman).)
 

 2.
 
 The Evidence at the Hearing
 

 Under Revenue and Taxation Code section 167, in an administrative hearing involving an owner-occupied single-family dwelling, there is a rebuttable presumption that the owner’s valuation is correct. In such an instance, the burden is on the County to overcome the presumption.
 
 [2]
 

 At the subject hearing, the County provided evidence of three sales in the same locale within three months of the assessed valuation date (March 1, 1993) of appellant’s property. The three sales were:
 

 1. 940 Foothill Drive, which sold for $5,250,000. The residence was built in 1979 and measures 8,844 square feet on a 48,452-square-foot lot. The value of improvements was $594 per square foot.
 

 
 *501
 
 2. 513 North Doheny Drive, which sold for $5.5 million, was built in 1988. The lot size is 27,680 square feet. The house size is 11,571 square feet, with a value of improvements equal to $474 per square foot.
 

 3. 812 North Foothill Drive, which sold for $3.3 million. The lot size is 29,490 square feet. The 6,858-square-foot residence was built in 1927. The improved value is $467 per square foot.
 

 The problem that arose at the hearing was that M. Herrera, the assessor who did the actual appraisal, was not present at the hearing. Appellant complains that the absence of Herrera precluded effective cross-examination on the issue of whether adjustments had been made between each of the comparable sales as against appellant’s property under rule 4(d).
 
 [3]
 
 We note that on the work sheets prepared by Herrera, the improved value was determined by simply dividing the purchase price by the square footage of the residence.
 

 An appraiser named Alan Whipp did testify. Whipp admitted that there was no specific mention on Herrera’s work sheets that any adjustments were made. However, Whipp testified that it was common practice to either: (a) not adjust when the difference in value of a comparable sale to the subject property was so large that any adjustment would still exceed the appraised value of the subject property; or (b) to make the decision that no adjustment was warranted because the factors (size, age, location, amenities, etc.) canceled each other out.
 
 [4]
 
 Whipp stated that even though no adjustments were mentioned, he felt that the appropriate items were considered by Herrera and were found to be zero.
 

 Appellant’s representative (Dave Middleton) moved to exclude any evidence of respondent’s comparable sales on the basis of hearsay and because appellant was effectively precluded from cross-examining respondent on the subject of adjustments. Middleton’s motion to exclude was denied. Middleton then questioned Whipp briefly as to some potential adjustments on the 940 Foothill property, and on the 513 North Doheny property. One of the
 
 *502
 
 board members advised Middleton that all information should be given at this time, because there would be no other opportunity for him to present additional evidence at some future date.
 

 Thereafter, appellant’s expert, Craig Lipsey, testified. He had prepared five comparable sales, but the AAB requested that he give them just the three that were most favorable to appellant. Those three were:
 

 1. 9425 Sunset Boulevard, which sold for $2 million. The 3,916-square-foot home was built in 1912 and sits on a 51,400-square-foot lot. The improved value is $511 per square foot.
 

 2. 901 Rexford Drive, which sold for $3,150,000. The 8,116-square-foot house was built in 1988 and sits on a 40,500-square-foot lot. The improved value is $388 per square foot.
 

 3. 620 Mountain Drive, which sold for $3,010,000. The 4,881-square-foot house was built in 1951 and sits on a 49,660-square-foot lot. The improved value is $617 per square foot.
 
 [5]
 

 After making adjustments for location, age of the improvements, size of the respective homes, lot size, location, and amenities, Lipsey opined that the improved square foot value of the three comparable sales should be reduced to $339, $370, and $373, respectively. Lipsey was of the further opinion that the improved value of appellant’s property should be $365 per square foot, which would result in a market value of $3,025,000.
 

 Each side subsequently submitted proposed findings of fact and a proposed decision. Appellant once again requested that the AAB strike the evidence of comparable sales introduced by respondent under the authority of
 
 Main & Von Karman, supra,
 
 23 Cal.App.4th 337, a case which will be more fully discussed later. That request was evidently denied, as the AAB filed a three-page decision that had little resemblance to the suggested findings of fact submitted by the parties.
 

 Instead, the AAB simply set forth the background information on the subject property; the comparable sales introduced by the County (with the notation that “No specific dollar or percentage adjustments were made”), the comparable sales introduced on behalf of appellant, and the conclusion of
 
 *503
 
 the AAB that the 1993 fair market value of the subject property was $3,509,000.
 
 [6]
 

 3.
 
 The Main & Von Karman Case
 

 Main & Von Karman
 
 involved two parcels of commercial property. The taxpayer appealed the 1989 assessments, and presented evidence that, based on the income approach to value, the two parcels had been overassessed. The county assessor countered with the comparable sales method, and introduced raw data on the sales of several other properties. The taxpayer objected on the ground that the assessor failed to make adjustments to reflect the differences between the comparable sales and the subject properties as required by rule 4(d).
 

 The assessor admitted that no adjustments were made. He offered a lack of county resources as one excuse. For the second, he contended that rule 4 was merely a guideline, which the assessor was not mandated to follow.
 

 The appellate court rejected both arguments. First, the appellate court held that when the assessor relied on the comparable sales approach to value, it was mandatory that the assessor comply with rule 4 “to ensure statewide uniformity in appraisal practices
 
 (Xerox Corp.
 
 v.
 
 County of Orange
 
 (1977) 66 Cal.App.3d 746, 753 [136 Cal.Rptr. 583]), and to assure that the property is assessed at its full value (Rev. & Tax. Code, § 401.5).”
 
 (Main & Von Karman, supra,
 
 23 Cal.App.4th 337, 343.) Next, the appellate court stated that the “lack of resources” argument was not “sufficient to relieve the assessor of his obligation to make adjustments to the raw data before presenting the comparable sales as evidence to the AAB.”
 
 (Ibid.)
 
 The court concluded that “[t]he failure of the assessor to follow rule 4 requires reversal of the AAB’s decision since the fair market value of the properties as determined by the AAB was based on evidence which was legally incompetent.”
 
 (Id.,
 
 at p. 344.)
 

 4.
 
 Analysis of the Present Case
 

 In order to avoid the application of the holdings of
 
 Main & Von Karman,
 
 the County makes three arguments. First, the County contends that
 
 *504
 
 its appraiser did in fact make an adjustment, and the adjustment was zero. We disagree. There was no competent evidence that Herrera did anything at all to consider adjusting the value of the comparable sales or the subject property upward or downward based on the interplay of the variety of factors that should have been considered, such as location, lot size, house size and age, and other amenities. Whipp had no firsthand knowledge of whether or not Herrera did in fact consider and make all appropriate adjustments, and in response to the leading questions asked him, said that even though not disclosed on the work sheets, Herrera “probably” made the adjustments.
 
 [7]
 
 Just because there is an office policy to do so does not mean that it was in fact done. Further, even if Herrera did subjectively make the adjustments without disclosure on the work sheets, the County would fare no better. The shortcut practice of making an “overall adjustment” or a “range of values” estimation has been soundly rejected on the basis that the AAB must be provided with a solid evidentiary foundation for its decision.
 
 (Main & Von Karman, supra,
 
 23 Cal.App.4th at p. 343;
 
 Midstate Theatres, Inc.
 
 v.
 
 County of Stanislaus
 
 (1976) 55 Cal.App.3d 864, 880-881 [128 Cal.Rptr. 54];
 
 Dressler
 
 v.
 
 County of Alpine
 
 (1976) 64 Cal.App.3d 557, 569, fn. 6 [134 Cal.Rptr. 554].)
 

 Without citation to authority, the County next argues that the lack of adjustments is somehow justified in that the subject property here is residential whereas the properties in
 
 Main & Von Karman
 
 were commercial, “which are more complicated properties.” That argument is without merit. Rule 4 does not distinguish between types of properties. Moreover, it is easy to imagine a situation where a commercial property (such as a freestanding
 
 *505
 
 single-story 1,000-square-foot flower shop) would be far less complex to assess than a large residential property.
 

 Finally, the County contends that even if the adjustments were not made, no miscarriage of justice occurred in this matter because the correct result was reached. The County asserts that in
 
 Main & Von Karman,
 
 the taxpayer pointed out several major differences between the comparable sales and the subject properties which could have had a major impact on valuation; whereas in the present case, appellant did not show what adjustments should be made to the comparable sales presented by the assessor. However, that argument ignores the central holding of
 
 Main & Von Karman,
 
 which was that the failure to abide by rule 4(d) made the assessor’s evidence legally incompetent. We agree with that holding and reject the County’s position.
 

 5.
 
 Remand to the Trial Court and AAB
 

 Appellant claims that if we rule in his favor, the matter should be remanded to the AAB with directions to enter an assessment for $2.4 million. He reasons that such sum was his estimate of value going into the hearing, and if the County’s evidence was legally inadmissible, then the County did not overcome the presumption that appellant’s value was correct. Further, as the presumption of correctness was not overcome, the testimony of appellant’s own appraiser (Lipsey) was superfluous, and thus the appropriate valuation should be $2.4 million. In support of his argument, he cites
 
 Prudential Ins. Co.
 
 v.
 
 City and County of San Francisco
 
 (1987) 191 Cal.App.3d 1142 [236 Cal.Rptr. 869]. We disagree with appellant’s claim.
 

 Prudential
 
 does not support appellant’s position. In that case, the matter was ordered back to the superior court for further remand to the AAB. The appellate court limited the new hearing before the AAB to a factual consideration under a cash-equivalent analysis. (191 Cal.App.3d at pp. 1161-1162.) Therefore, the appellate court did not order that the taxpayer’s value had to be accepted on remand. It simply prevented the assessor from proceeding with a pure de novo hearing in which the assessor might have attempted to present a new theory of valuation.
 
 (Id.,
 
 at p. 1162, fn. 9.)
 

 The same basic result occurred in
 
 Main & Von Karman,
 
 where the appellate court said: “[S]imply because ‘substantial evidence of comparability was not produced at the county board hearing does not mean that none is available.’
 
 (Dressler
 
 v.
 
 County of Alpine, supra,
 
 64 Cal.App.3d at p. 571.) Remanding the matter to the AAB for further hearings, to be completed according to the standards prescribed by law, is the proper remedy.” (23 Cal.App.4th at p. 344.)
 

 
 *506
 
 Appellant argues that the County should not be given two bites of the apple to present evidence at a subsequent hearing that could have been presented at the first hearing. As attractive as that argument is, it seems to us that the overriding policy concern before us is that all property should be properly assessed and bear its fair share of property taxes.
 

 In effect, appellant wishes us to accept a valuation of $2.4 million, which is over $600,000 less than his own appraiser said the subject property is worth. We see no fairness in a situation where a taxpayer’s low-ball valuation would have to be mandatorily accepted because the assessor, for whatever valid or invalid reason, did not comply with rule 4(d). In this case, as in
 
 Dressler
 
 and in
 
 Main & Von Karman,
 
 a second hearing will occur. That hearing may or may not result favorably to appellant. However, appellant’s inconvenience and expense may be ameliorated by the trial court’s consideration of attorney fees and costs. (Rev. & Tax. Code, §§ 1611.6 and 5152; Gov. Code, § 800;
 
 Main & Von Karman, supra,
 
 23 Cal.App.4th at p. 344.)
 

 Disposition
 

 The judgment is reversed. The matter is remanded to the trial court. The trial court is ordered to issue a peremptory writ of mandate directing the AAB to hold a further hearing in a manner consistent with this opinion. Appellant is awarded costs on appeal. Appellant’s request for attorney fees is transferred to the superior court.
 

 Fukuto, Acting P. J., and Zebrowski, J., concurred.
 

 A petition for a rehearing was denied January 16, 1998.
 

 [1]
 

 The assessed valuation ($3,509,900) divided by the size of the residence (8,287 sq. ft.).
 

 [2]
 

 Revenue and Taxation Code section 167 provides, in pertinent part: “(a) Notwithstanding any other provision of law to the contrary, . . . there shall be a rebuttable presumption affecting the burden of proof in favor of the taxpayer or assessee who has supplied all information as required by law to the assessor in any administrative hearing involving the imposition of a tax on an owner-occupied single-family dwelling . . . .”
 

 Property Tax Rule 321(b) of the California Code of Regulations, title 18, section 321, subdivision (b) also includes language similar to the above language.
 

 [3]
 

 Rule 4 (Cal. Code Regs., tit. 18, § 4) is entitled “The Comparative Sales Approach to Value." It provides, in pertinent part: “When reliable market data are available with respect to a given real property, the preferred method of valuation is by reference to sales prices. In using sales prices of the appraisal subject or of comparable properties to value a property, the assessor shall: [1... HD (d) Make such allowances as he deems appropriate for differences between a comparable property at the time of sale and the subject property on the valuation date, in physical attributes of the properties, location of the properties, legally enforceable restrictions on the properties’ use, and the income and amenities which the properties are expected to produce."
 

 [4]
 

 I.e., the age of a residence might be offset by the lot size of a comparable sale, etc.
 

 [5]
 

 620 Mountain Drive is next door to the property which is the subject of this appeal.
 

 [6]
 

 In its response brief, the County states even though the AAB stated that “[n]o specific dollar or percentage adjustments were made,” the trial court found that “an adjustment equal to zero was still an adjustment and that these were in fact made.” While the trial court did make that statement during oral argument, no such finding was incorporated into the trial court’s statement of decision and judgment. Instead, the trial court simply made the conclusionary rulings that the assessor’s evidence was competent and admissible, and that the AAB’s decision was supported by substantial evidence.
 

 [7]
 

 The relevant questions (which were either compound or leading) between the assessor’s representative (Harley Outten) and Whipp were reported as follows:
 

 “Outten: Mr. Whipp, if you are nervous that the 1st comparable is a . . . there’s an age difference of 1979 built and a somewhat smaller lot. I know you didn’t prepare this so I am going to ask you a question in general. Mr. Herrera prepared this. Do you know if he considered adjustments for any of these comparables including Foothill, Doheny, and the Foothill south of Sunset Boulevard? Did he make any adjustments that you know of and if not, did he consider any of those adjustments? Are you privy to that information?
 

 “Whipp: We would have considered adjustments for differences in square footage and lot size, but none are actually written or indicated on the form.
 

 “Outten: Is this normally the practice for the assessor’s office to look at these things? Do they look over and say because of the large difference in value for that square footage that perhaps the adjustments were made. Now I know these are general adjustments, but do you think he considered the difference in say for instance lot size?
 

 “Whipp: Yes.
 

 “Outten: And he decided not to make adjustments for that. Do you think that was perhaps off-set by the age in some way?
 

 “Whipp: Right.
 

 “Outten: In other words, those adjustments although not made as a dollar or percentage form were probably considered and the adjustments he felt overall were 0.
 

 “Whipp: Yes, I would say so.”