[No. C033467. Third Dist. Nov. 27, 2000.]

HEAVENLY VALLEY, Plaintiff and Respondent, v.
EL DORADO COUNTY BOARD OF EQUALIZATION, Defendant and
Appellant;
EL DORADO COUNTY BOARD OF SUPERVISORS, Real Party in
Interest and Appellant.

1324

**COUNSEL**

Louis B. Green and Thomas R. Parker for Defendant and Appellant and for Real Party in Interest and Appellant.

Phillip S. Cronin, County Counsel, and Barbara Booth Grunwald, Deputy Counsel Counsel, for William Greenwood, Fresno County Assessor-Recorder as Amicus Curiae on behalf of Defendant and Appellant.

Louise H. Renne, City Attorney (San Francisco), Mark L. Mosley and Claude F. Kolm, Deputy City Attorneys, for City and County of San Francisco and the California State Association of Counties as Amicus Curiae on behalf of Real Party in Interest and Appellant.

Nossaman, Guthner, Knox & Elliott, Douglas J. Maloney; and Allen A. Hain for California Assessors' Association as Amicus Curiae on behalf of Real Party in Interest and Appellant.

David L. Gangloff, Jr., and Ronald Gangloff for Plaintiff and Respondent.

William Gregory Turner for California Taxpayers' Association and Silicon Valley Manufacturing Group as Amicus Curiae on behalf of Plaintiff and Respondent.

Bill Lockyer, Attorney General, Randall Borcherding and Jack Newman, Deputy Attorneys General, for California State Board of Equalization as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**SIMS, Acting P. J.**—Appellants El Dorado County Board of Equalization (CBOE) and El Dorado County Board of Supervisors (CBOS) appeal from the trial court's grant of Heavenly Valley's petition for a writ of administrative mandamus (Code Civ. Proc., § 1094.5), in which the trial court determined Heavenly Valley had a right to administrative review following a business property audit under Revenue and Taxation Code section 469.[1] The audit revealed an undervaluation of some property but, because other property had been overassessed, the assessor concluded the net difference was de minimis and issued a "no change" audit result. Appellants contend (1) a taxpayer has no postaudit administrative appeal rights unless an audit results in actual levy of an additional assessment (escape assessment), (2) even if administrative appeal rights exist, the trial court should have remanded the case for an administrative hearing rather than adopting Heavenly Valley's opinion concerning value of the property, and (3) the doctrine of laches should be applied against Heavenly Valley.

We shall conclude, as did the trial court, that the taxpayer has a right to administrative appeal. We shall also conclude, however, the trial court should have remanded for an administrative hearing rather than ordering adopted the taxpayer's opinion of value. We shall therefore affirm in part and reverse in part.[2]

---

[1]Undesignated statutory references are to the Revenue and Taxation Code.

[2]We deny Heavenly Valley's December 27, 1999, request for judicial notice of proposed 1999 legislation, Assembly Bill No. 1643, for reasons we explain *post*.

As also explained *post*, we deny appellants' March 20, 2000, request for judicial notice of purported legislative history documents attached to its reply brief to the amicus curiae brief of California Taxpayers' Association and Silicon Valley Manufacturing Group, because appellants fail to show the documents are cognizable legislative history. (E.g., *Quintano v. Mercury*

## STATUTORY FRAMEWORK

We begin with an overview of the statutes pertinent to resolution of this appeal.

"All property in this State, not exempt under the laws of the United States or of this State, is subject to taxation under this code." (§ 201; see also Cal. Const., art. XIII [stating all property is taxable but setting forth exemptions].) The assessor assesses all property subject to general property taxation on the annual lien date. (§ 401.) The initial valuation of real property is made by the county assessor (Cal. Const., art. XIII A, § 2; §§ 110, 110.1); the initial valuation of business personal property is made using a business property statement, which the taxpayer is required to submit. (§ 441.) The assessed value of all property is listed on the assessment roll. (§ 601.)

A property owner dissatisfied with the annual assessment must file an application for reduction by September 15 with the county board of equalization,[3] which has authority to "equalize the values of all property on the local assessment roll by adjusting individual assessments." (Cal. Const., art. XIII, § 16; § 1603.) "Equalization" means "adjusting the value of property

---

*Casualty Co.* (1995) 11 Cal.4th 1049, 1062 [48 Cal.Rptr.2d 1, 906 P.2d 1057] [statements of individual legislators, including author of bill, are not necessarily cognizable legislative history]; *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 700-701 [170 Cal.Rptr. 817, 621 P.2d 856] [letters urging Governor to sign bill are not cognizable legislative history unless they indicate their statements were presented to legislators].) As we also explain *post*, we deny as unnecessary appellants' March 20, 2000, request for judicial notice of a page of a State Board of Equalization (SBE) Assessors' Handbook reflecting that a county need not pursue de minimis taxes following the type of audit which was performed in this case.

We allowed the filing of the following amicus curiae briefs in support of the county: (1) City and County of San Francisco and California State Association of Counties (which submitted a brief limited to the laches issue); (2) California Assessors' Association (which argued the trial court should have remanded the case for administrative hearing rather than adopt the taxpayer's opinion of property value); and (3) William Greenwood, Fresno County Assessor-Recorder (arguing actual enrollment of an escape assessment is necessary to trigger the right to administrative review, review should be limited to personal property, and joining the arguments of others that the remedy should be remand rather than adoption of the taxpayer's valuation). We deny Fresno's request for judicial notice, contained in its amicus curiae brief, as we explain *post*.

We allowed the filing of the following amicus curiae briefs in support of Heavenly Valley: (1) California SBE (which argued actual enrollment of an escape assessment is not necessary for administrative review); and (2) California Taxpayers' Association and Silicon Valley Manufacturing Group (which argued enrollment of an escape assessment is not necessary, and adoption of the taxpayer's valuation was proper).

[3]"County board" under these provisions means a county board of supervisors meeting as a county board of equalization or an assessment appeals board. (§ 1601.)

assessed to conform to its real value." (*County of Sacramento v. Assessment Appeals Bd. No. 2* (1973) 32 Cal.App.3d 654, 663 [108 Cal.Rptr. 434].)

Section 469[4] requires an audit every four years for businesses with tangible personal property valued at $300,000 or more.

If the audit reveals property was overassessed for any cause, the taxpayer may be entitled to seek a refund. (§ 469 [see fn. 4, *ante*].)

If the audit discloses property that has "escaped assessment," i.e., has been underassessed or unassessed (*American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1127 [51 Cal.Rptr.2d 251, 912 P.2d 1198]), the assessor has a duty to levy an "escape assessment" for pertinent years within the audit period. (§ 469 [see fn. 4, *ante*]; § 531.[5])

However, if the audit reveals both underassessment and overassessment, the assessor may offset overassessments against proposed tax liabilities resulting from escape assessments for any tax year covered by the audit.

---

[4]Section 469 provides in part: "In any case in which locally assessable trade fixtures and business tangible personal property owned, claimed, possessed, or controlled by a taxpayer engaged in a profession, trade, or business has a full value of three hundred thousand dollars ($300,000) or more, the assessor shall audit the books and records of that profession, trade, or business at least once each four years. . . .

"Upon completion of an audit of the taxpayer's books and records, the taxpayer shall be given the assessor's findings in writing with respect to data that would alter any previously enrolled assessment.

"[Prior equalization by county board of equalization or assessment appeals board does not preclude subsequent audit and escape assessment, but does preclude escape assessment on that portion of the assessment that was the subject of the equalization hearing.]

"If the result of an audit for any year discloses property subject to an escape assessment, then the original assessment of all property of the assessee at the location of the profession, trade, or business for that year shall be subject to review, equalization and adjustment by the county board of equalization or assessment appeals board pursuant to Chapter 1 (commencing with Section 1601) of Part 3 of this division, except in those instances when the property had previously been equalized for the year in question.

"If the audit for any particular tax year discloses that the property of the taxpayer was incorrectly valued or misclassified for any cause, to the extent that this error caused the property to be assessed at a higher value than the assessor would have entered on the roll had the incorrect valuation or misclassification not occurred, then the assessor shall notify the taxpayer of the amount of the excess valuation or misclassification, and the fact that a claim for cancellation or refund may be filed with the county as provided by Sections 4986 and 5096."

[5]Section 531 provides in part: "If any property belonging on the local roll has escaped assessment, the assessor shall assess the property on discovery at its value on the lien date for the year for which it escaped assessment. It shall be subject to the tax rate in effect in the year of its escape except as provided in Section 2905 of this code."

(§ 533.[6]) Moreover, section 155.20,[7] if implemented by a county, allows the county assessor to forego collection of "de minimis" taxes.

Section 1605, subdivision (e) (see fn. 13, *post*), allows a taxpayer to seek administrative review by the county board of equalization "[i]f an audit of the books and records of any profession, trade, or business pursuant to Section 469 discloses property subject to an escaped [*sic*] assessment for any year . . . ." (§ 1605, subd. (e).)

The main question in this appeal is whether the taxpayer is entitled to administrative review where an audit discloses underassessments, but the underassessments are offset against overassessments, such that no escape assessment is actually levied, i.e., "enrolled." (§ 534 [assessment is deemed made on date entered on the roll if assessee is timely notified].)

### Factual and Procedural Background

Heavenly Valley conducts business in El Dorado County as a ski lift resort operator. The El Dorado County Assessor (County Assessor) assessed Heavenly Valley's real property and personal business property for tax purposes. The tax years at issue in this appeal are 1992-1993 (1992), 1993-1994 (1993), 1994-1995 (1994), and 1995-1996 (1995). For each of those years, the full value of the taxpayer's business tangible personal property exceeded $300,000. Heavenly Valley did not protest any of those assessments by the September 15 deadline for those years.

In early 1996, the County Assessor conducted a mandatory audit of Heavenly Valley pursuant to section 469 (see fn. 4, *ante*), which requires an

---

[6]Section 533 provides in part: "Assessments made pursuant to Article 3 (commencing with Section 501) of this chapter or pursuant to this article shall be entered on the roll for the current assessment year as defined in Section 118 and, if this is not the roll for the assessment year in which the property escaped assessment, the entry shall be followed with 'Escaped assessment for year 19__ pursuant to Sections __ of the Revenue and Taxation Code.' [¶] If the assessments are made as a result of an audit which discloses that property assessed to the party audited has been incorrectly assessed either for a past tax year for which taxes have been paid and a claim for refund is not barred by Section 5097 or for any tax year for which the taxes are unpaid, the tax refunds resulting from the incorrect assessments shall be an offset against proposed tax liabilities, including accumulated penalties and interest, resulting from escaped assessments for any tax year covered by the audit. [¶] . . . [¶] If such tax refunds exceed any proposed tax liabilities, including accumulated penalties and interest, the party audited shall be notified by the tax collector of the amount of the excess and of the fact that a claim for cancellation or refund may be filed with the county as provided by Section 5096 or 5096.7."

[7]Section 155.20 allows county boards of supervisors to forego property tax for property values under $5,000 if "the total taxes, special assessments, and applicable subventions on the property would amount to less than the cost of assessing and collecting them."

audit every four years for businesses with tangible personal property valued at $300,000 or more.

Heavenly Valley and the County Assessor met on February 1, 1996, to discuss the audit results. The County Assessor presented an "AUDIT SUMMARY" showing a significant underassessment of property for the tax years under audit. Heavenly Valley countered that other property had been overvalued and asked that overassessments be corrected by following SBE depreciable economic life schedules for ski lifts, and by using appropriate depreciation tables that adequately reflected actual loss in value for assets.

The County Assessor determined property had been overassessed, by over $3 million, for 1993. The overassessment was offset against the underassessment (§ 533; see fn. 6, *ante*), with a net result of $1,290 in underassessed value, which assertedly would yield $12.90 in additional revenue for the county.[8] Pursuant to section 155.20 (see fn. 7, *ante*) (implemented by El Dorado County in 1994), the County Assessor found this amount to be de minimis, such that no change was necessary. In a letter dated April 24, 1996, the County Assessor notified Heavenly Valley: "We have completed the required mandatory audit for Heavenly Lake Tahoe. Although some modifications were made for individual years, the net changes resulted in a 'no change' audit."[9]

On June 25, 1996, Heavenly Valley filed for each of the four tax years (1992 through 1995) an "APPLICATION FOR CHANGED ASSESSMENT" with the CBOE, pursuant to section 1605, subdivision (e) (see fn. 13, *post*), which allows a taxpayer to seek administrative review if a section 469 audit

---

[8]It has been suggested in this appeal that section 533 (see fn. 6, *ante*), allows offset only after the escape assessment has been enrolled, which was not done in this case. However, section 533 allows offset against "proposed tax liabilities."

[9]Arguments are presented on appeal as to whether section 155.20 was applicable to the section 533 offset result. Appellants argue it is applicable. Heavenly Valley argues inter alia that section 155.20 does not allow a county to exempt a portion of property, hence cannot be used to wipe out the $12.90 net tax owed by Heavenly Valley under the audit results. Apparently, Heavenly Valley wants an escape assessment to be levied against it, in order unequivocally to trigger the right to administrative review, which will open up for review all the property. Amici curiae join the fray on the question of section 155.20's applicability. However, we need not resolve this matter because it is inconsequential to this appeal, given our conclusion that the auditor's finding of underassessed property triggered the taxpayer's right to administrative review, regardless of whether or not an escape assessment was actually levied. Accordingly, we deny as unnecessary appellants' request for judicial notice of a page from an SBE Assessors' Handbook, which assertedly supports application of section 155.20 to a section 469 audit. (See fn. 2, *ante*.)

"discloses property subject to an escaped [*sic*] assessment for any year."[10] (§ 1605, subd. (e).) CBOE set a February 1997 date for a hearing on valuation but, at the County Assessor's request, notified Heavenly Valley on January 10th that the hearing would be limited to jurisdictional questions only.

At the February 1997 hearing, the County Assessor argued that since the audit resulted in "no change," Heavenly Valley had no right to apply for an assessment reduction. According to the County Assessor, a taxpayer has the right to an administrative appeal only if an escape assessment is actually levied or "enrolled." Heavenly Valley countered that section 1605 authorized an administrative appeal because the audit disclosed property "subject to" an escape assessment, i.e., property that had been underassessed, even though no escape assessment was imposed due to the offset. Heavenly Valley produced a 1984 administrative interpretation by the SBE in a letter to county assessors (LTA), which addressed this specific question. The 1984 LTA noted the legislative intent of sections 469 and 1605 was "to afford the taxpayer a similar right to 'open up' past assessments as the assessor has." The LTA said the statutory language about property "subject to" an escape assessment "does not specify an escape assessment must be enrolled, only that the audit disclose[] property that should have been assessed but was not. It would be a tortured reading of the law to conclude that property is not 'subject to an escape assessment' merely because some other error offset the escape." Heavenly Valley also produced at the hearing SBE employee Mark Buckley, who stated SBE's current position remained consistent with the 1984 LTA, that property "subject to an escape assessment" does not require an actual assessment to be enrolled, but only that property have been underassessed or unassessed.

CBOE decided to continue the hearing and seek an opinion from the State Attorney General.

On November 21, 1997, the Attorney General published an opinion, No. 97-315 (80 Ops.Atty.Gen. 322), concluding: "A property owner may apply for review, equalization, and adjustment of a county assessor's assessment with respect to the value of all property at the location of the owner's business after a mandatory audit of the owner's books and records has been made by the county assessor that discloses both an underassessment and overassessment of some of the property, resulting in no change to the original assessment." (*Id.* at p. 323). The Attorney General opinion stated in

---

[10]Since no one argues to the contrary, we shall assume for purposes of this appeal that Heavenly Valley's applications were timely under section 1605, subdivision (e), which requires applications to be filed no later than 60 days after the assessee is notified.

part: "The requirement of sections 469 and 1605 are met for filing an application for review if the audit discloses 'property subject to an escape assessment.' In this context, the term 'subject to' commonly means exposed to, disposed to, or being under the contingency of. (See Webster's Third New Internat. Dict. (1961), p. 2275.) The statutes do not require the actual issuance of an escape assessment, only that the audit disclose some or all of the property as being under the contingency of an escape assessment. We are to interpret statutes by consulting 'the words themselves, giving them their usual and ordinary meaning.' [Citation.]" (*Id.* at p. 325, fn. omitted) The Attorney General opinion stated nothing in the legislative history was inconsistent with its conclusion. The opinion also stated its interpretation was consistent with the 1984 SBE administrative interpretation.

At the continued hearing on March 9, 1998, CBOE, rejecting the Attorney General opinion, ruled it had no jurisdiction because the taxpayer had no right to review. Heavenly Valley through its attorney stated on the record that it would wait until expiration of the two-year period within which CBOE must complete the hearing (§ 1604) before commencing court action, in order to claim operation of a provision calling for automatic adoption of the taxpayer's opinion of value when the CBOE fails to hear evidence and make a final determination on an application for reduction within two years of the timely filing of the application. (§ 1604, subd. (c).)[11]

After expiration of the two-year period, Heavenly Valley on April 12, 1999, filed its petition for a writ of administrative mandamus in the trial court, arguing the audit's discussion of underassessed property triggered the right to administrative review, and since the time for completing the administrative hearing had passed, Heavenly Valley's opinion of property value must be adopted. CBOE and CBOS opposed the petition, defending the decision that jurisdiction was lacking, and arguing laches and that the proper remedy (if there was jurisdiction) was to remand for further administrative proceedings.[12]

Following a court hearing, the trial court on July 29, 1999, issued a written "DECISION" granting the petition for writ of mandamus. The court

---

[11]Section 1604, subdivision (c), provides in part: "If the county assessment appeals board fails to hear evidence and fails to make a final determination on the application for reduction in assessment of property within two years of the timely filing of the application, the taxpayer's opinion of market value as reflected on the application for reduction in assessment shall be the value upon which taxes are to be levied for the tax year covered by the application, [with exceptions not applicable here]. . . ."

[12]We shall assume for purposes of this appeal that a petition for a writ of administrative mandamus (rather than traditional mandamus) was the appropriate vehicle to challenge the county board's decision that it lacked jurisdiction.

concluded Heavenly Valley was entitled to administrative appeal of the audit because the audit disclosed property that had been underassessed, hence was "subject to an escape assessment," even though no assessment was actually levied. The court further indicated Heavenly Valley was not required to file a separate claim for a refund as to property that had been overassessed, because no refund would be in order without the requested hearing to equalize value, which would determine the tax. With respect to laches, the trial court said laches did not apply because any delay was attributable to the acts of CBOE, and application of laches would deny Heavenly Valley due process and defeat the intent of sections 469 and 1605. The court ruled the time for an administrative hearing had expired, CBOE had failed to hold the required hearing, hence the taxpayer's valuation would be automatically adopted under section 1604, subdivision (c).

CBOE and CBOS appeal.

## DISCUSSION

### I. *Standard of Review*

■ This appeal presents questions of statutory construction, which are questions of law subject to de novo review. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) ■ The question of laches may also be decided as a matter of law where, as here, the underlying facts are undisputed. (*San Bernardino Valley Audubon Society v. City of Moreno Valley* (1996) 44 Cal.App.4th 593, 605 [51 Cal.Rptr.2d 897].)

### II. *Right to Administrative Appeal of Audit*

■ Appellants argue the taxpayer does not have a right to an administrative appeal following a section 469 audit unless an escape assessment is actually levied ("enrolled"). We disagree.

As indicated, the statutory scheme allows that (1) if the audit reveals overassessed property, the taxpayer may be entitled to a refund; (2) if the audit reveals underassessed property, an escape assessment must be levied; but (3) if the audit reveals both underassessed and overassessed property, the two may be offset against each other. (§ 469; see fn. 4, *ante*; § 533; see fn. 6, *ante*.)

Section 1605,[13] in subdivision (e), authorizes an administrative appeal if the section 469 audit "discloses property subject to an escaped [*sic*] assessment for any year . . . ."

---

[13]Section 1605 provides in part: "(a) An assessment made outside of the regular assessment period is not effective for any purpose, including its review, equalization and adjustment by

■ The objective of statutory interpretation is to ascertain and effectuate legislative intent. (*Burden v. Snowden, supra,* 2 Cal.4th at p. 562.) In determining intent, we look first to the language of the statute, giving effect to its plain meaning. (*Ibid.*) Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. (*Ibid.*; Code Civ. Proc. § 1858.) We interpret statutes by consulting "the words themselves, giving them their usual and ordinary meaning." (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].)

■ The common meaning of "subject to" includes "exposed to." (Webster's 3d New Internat. Dict. (1961) p. 2275.) By a plain reading of the statutes, the taxpayer is entitled to administrative review if an audit reveals property that was underassessed or unassessed (hence exposed to further taxation) regardless whether or not an escape assessment is actually levied.

Appellants argue that the dictionary also defines "subject to" as "making liable," and we should therefore adopt only that one restrictive meaning. Appellants argue a taxpayer is not "subject to" an assessment unless an assessment is actually enrolled. We note the statute refers to *property* being subject to assessment, not the *taxpayer.* In any event, the term "subject to assessment" plainly encompasses exposure to assessment.

Even if we were to consider the statutory language ambiguous, we would reach the same conclusion, that the taxpayer has a right to administrative review if the section 469 audit discloses property that was underassessed or unassessed.

Thus, appellants argue we should not construe "subject to" in its ordinary meaning of "exposed to," because to do so would ignore the context of the

the county board, until the assessee has been notified thereof personally or by United States mail at the assessee's address as contained in the official records of the county assessor. Receipt by the assessee of a tax bill based on that assessment shall suffice as the notice.

"(b) Upon application for reduction pursuant to subdivision (a) of Section 1603, the assessment shall be subject to review, equalization and adjustment by the county board. The application shall be filed with the clerk no later than 60 days after the date on which the assessee was notified. . . . [¶] . . . [¶]

"(e) If an audit of the books and records of any profession, trade, or business pursuant to Section 469 [(see fn. 4, *ante*)] discloses property subject to an escaped [*sic*] assessment for any year, then the original assessment of all property of the assessee at the location of the profession, trade, or business for that year shall be subject to review, equalization and adjustment by the county board of equalization or assessment appeals board pursuant to this chapter, except in those instances when that property had previously been equalized for the year in question by the county board of equalization or assessments appeal board. The application shall be filed with the clerk no later than 60 days after the date on which the assessee was notified. Receipt by the assessee of a tax bill based upon that assessment shall suffice as that notice."

related Revenue and Taxation Code provisions, which assertedly require actual levy of an escape assessment as a prerequisite for administrative review. Appellants' argument appears to be as follows: Section 1605, subdivision (a) (see fn. 13, *ante*), indicates that an escape assessment is not effective for any purpose, including its administrative review, until the assessee is notified of the assessment. Section 1605, subdivision (e) (see fn. 13, *ante*), starts the 60-day period for administrative review on "the date on which the assessee was notified," and receipt of a tax bill "shall suffice as that notice." Therefore, argue appellants, the review period of section 1605, subdivision (e), is never triggered absent a duly enrolled escape assessment with notice of the escape assessment. Appellants further suggest that requiring enrollment of an escape assessment provides a date certain for triggering the right to administrative appeal, as opposed to an "amorphous" date of finding property exposed to an escape assessment.

However, the fact that section 1605, subdivision (a) (see fn. 13, *ante*), says an escape assessment is not effective for any purpose including its administrative review until the assessee is notified of the assessment, does not say or suggest that an escape assessment is the only event that triggers the right to review. Where no escape assessment is levied, the "date on which the assessee was notified" is the date on which the assessee is notified of the audit results. We note the SBE's 1984 LTA (which concluded an escape assessment need not be actually levied in order for the taxpayer to appeal), observed that where an overassessment offsets an underassessment, it is necessary to provide a formal notice to the taxpayer which will trigger the 60-day period for administrative appeal. Since the statutes did not describe the requirements for the notice, the LTA set forth suggestions for minimum contents of the notice.

Appellants argue their interpretation (that actual levy of an escape assessment is a prerequisite to administrative appeal) is supported by the fact that section 533 (see fn. 6, *ante*) says "[i]f the assessments are made as a result of an audit which discloses that property . . . has been incorrectly assessed . . . the tax refunds resulting from the incorrect assessments shall be an offset against *proposed* tax liabilities, including accumulated penalties and interest, resulting from escaped assessments for any tax year covered by the audit." (Italics added.) Appellants assert the word "proposed" in section 533 refers to the proposed escape assessment amount *before* the overassessed valuation amount is taken into account by offsetting, which assertedly harmonizes sections 469, 533 and 1605. However, appellants fail to show how use of the word "proposed" supports their position. Nothing in any of the statutes suggests any legislative intent to limit administrative review to cases where no offset occurred under section 533. Section 469 (see fn. 4,

*ante*), clearly allows a taxpayer to recoup an overpayment if the audit discloses an overassessment of property. If the assessor proposes to negate that potential refund by finding other property was underassessed, then we see no reason and no statutory prohibition precluding the taxpayer from challenging that finding of underassessment.

Appellants argue that allowing administrative review in this case would allow the taxpayer two bites of the apple. They note that under section 1605, subdivision (e) (see fn. 13, *ante*), the postaudit appeal opens up for review not merely the underassessed property but also the entire original assessment of all property for that year (except property that has been the subject of a previous equalization review). In appellants' view, allowing administrative review in the circumstances of this case would effectively void the September 15th deadline for regular administrative appeals, because a second right of appeal would exist "for the intentionally or negligently tardy business taxpayer who should have examined the assessment at the time of original levy." Appellants argue it is "absurd" to allow the taxpayer a "second right of appeal." They argue it would allow taxpayers to let business property statements (documents filled out by the taxpayer under penalty of perjury)— the foundation of the assessor's annual assessment—be filed incorrectly for the original year of assessment. Then the taxpayer would "discover" the error during the mandatory audit and demand an appeal even though they accepted the earlier valuation without appeal, in the hopes of lowering their ultimate property tax bill in a spirit of "gamesmanship." Appellants suggest taxpayers would undervalue their own property by "a single cent" in order to create property subject to an escape assessment, opening up the entire original assessment for review, and it is hard to prove intentional misconduct by taxpayers so as to avoid such manipulation. Appellants argue the danger of taxpayer manipulation is borne out by the experience of Fresno County, as reflected in the amicus curiae brief filed by the Fresno County Assessor. Fresno's brief says that after issuance of the Attorney General opinion in 1997, taxpayers are "gladly . . . 'discovering' " undervalued personal property in section 469 audits in order to reopen real property valuations. Fresno requests that we take judicial notice of documents to this effect, appended to its amicus curiae brief. Heavenly Valley opposes the request because it was not presented in a separate document.

We decline Fresno's request for judicial notice of its appendix 3, attached to its amicus curiae brief, because it does not help appellants. The possibility that a taxpayer may risk penalties for tax fraud by undervaluing property in the hopes of gaining extended time for administrative review is not a basis

for this court to impose a statutory construction contrary to the language and intent of the statutes.[14]

Appellants argue that allowing administrative appeal in Heavenly Valley's circumstances would allow business taxpayers to have advantages not granted to residential taxpayers, resulting in unequal treatment. However, as appellants acknowledge, nonbusiness taxpayers and small business taxpayers do not have to undergo the mandatory audit that business taxpayers such as Heavenly Valley are required to undergo.

Moreover, appellants' position is defeated by the fact that section 469 (see fn. 4, *ante*), expressly allows a taxpayer to file a claim for a refund if an audit discloses a net overassessment "for any cause." If appellants' interpretation were correct, the statute would not allow a taxpayer to obtain a post-audit refund for an overvaluation for which the taxpayer may have been responsible.

According to appellants, the Legislature intended to allow administrative review only when the assessor "actually levies" an escape assessment. Appellants argue that if the Legislature wanted to allow administrative appeals in Heavenly Valley's circumstances, the Legislature would have amended section 1603 (the statute setting the September deadline for administrative appeal of each year's assessment) or referred to section 1603 in section 469's audit provision. Appellants argue the Legislature chose to refer to postaudit section 469 appeals only in section 1605, an escape assessment

---

[14]Amicus curiae William Greenwood, Fresno County Assessor-Recorder, also requests judicial notice of a decision by the Fresno County Assessment Appeals Board, appended to its brief as appendix 1, which assertedly addresses a situation where taxpayers argue that administrative review is available even when a postaudit letter states the actual values as a result of the audit were close enough to the enrolled values so that no changes to the enrolled values were required. That situation is not at issue here, and we decline to consider it.

Fresno also requests judicial notice of a May 1989 letter from SBE to a taxpayer representative, attached to the amicus curiae brief as appendix 2, which indicated the assessor must make an escape assessment, in supposed disagreement with the 1984 LTA. We deny the request for judicial notice. The query in that matter was whether the taxpayer could obtain administrative review by disclosing unassessed property, where the auditor did not find any unassessed property. The answer was no. That matter is not at issue here. We note section 469 indicates the right to review occurs where the *audit* (not the taxpayer) discloses property subject to an escape assessment. Accordingly, we deny Fresno's request for judicial notice of appendix 2.

Fresno also argues Heavenly Valley should not be allowed administrative review for the 1993 tax year, because the audit found an *over*assessment of property for that year. It does not appear to us that appellants make this argument, hence we will not consider it.

Fresno argues that even if a taxpayer is entitled to administrative review under the circumstances of the case before us, that review should be limited to personal property only and should not encompass real property. That issue is not necessary to our disposition of this appeal, and we decline to address it.

provision, assertedly reflecting an intent to limit appeals to cases where escape assessments are enrolled. Appellants argue that if the Legislature had intended to allow postaudit administrative review regardless of whether an escape assessment was actually levied, it would have said so.

However, the Legislature *did* say so, by enacting a statute authorizing review whenever the audit discloses property "subject to" an escape assessment. Appellants would have us change the statute, by reading "subject to an escape assessment" as "subject*ed* to an escape assessment." We are aware, as appellants note, that the Legislative Counsel's Digest for the pertinent 1978 legislative amendments (Stats. 1978, ch. 732, Sen. Bill No. 1752), said the bill would "require the review, equalization and adjustment of the assessment of all property on the business premises where property is *subjected to* an escape assessment, unless such property has been equalized, and would provide for the refund of any overpayment of taxes which have been determined in such review to have been incorrectly assessed." Thus, the Legislative Counsel referred to property "subjected to" an escape assessment, while the statute refers to property "subject to" an escape assessment. The language "subjected to" is arguably supportive of appellants' position that an escape assessment must be actually enrolled in order to trigger a right to administrative review. However, upon analysis of the legislative history, we shall conclude the reference to "subjected to" does not support appellants' position.

Thus, the statute, as enacted by the Legislature, said "subject to," not "subjected to." ▮ Insofar as a Legislative Counsel's Digest conflicts with a statute, the digest must be disregarded. (*Kern River Public Access Com. v. City of Bakersfield* (1985) 170 Cal.App.3d 1205, 1222 [217 Cal.Rptr. 125].)

Moreover, we note other legislative history speaks of "subject to," not "subjected to." Thus, for example, the Legislative Analyst's analysis of Senate Bill No. 1752 (1977-1978 Reg. Sess.) states in part:

"Under existing law, taxpayers may file an application for review, equalization and adjustment of assessments with the county board of equalization or assessment appeals board only within a specified period following receipt of the original assessment. Existing law also requires the assessor to perform an audit at least once every four years of each business reporting personal property with a full value of $100,000 or more, and to report all findings of such audits to the taxpayer.

"This bill would provide that, whenever such an audit discloses property *subject to* an escape assessment, the taxpayer may file an application for

review, equalization and adjustment of the entire original assessment for the year to which the escape assessment applies. This bill also would provide for the refund of any amounts determined to have been incorrectly assessed.

"SB 1752 would provide that when property is *subject to* escape assessments for being undervalued or under-appraised, there be taken into account any overassessment on the same property. . . ." (Italics added, original italics omitted.)

The Senate Committee on Revenue and Taxation said with respect to the 1978 amendments that "the intent of SB 1752 is to provide a mechanism whereby over-assessments of property would be taken into consideration if an audit disclosed property *subject to* escape assessments for a particular year. Such over-assessments would be offset against escape assessments for any tax year covered by the audit." (Sen. Com. on Rev. and Taxation, Rep. on Sen. Bill No. 1752 (1977-1978 Reg. Sess.) p. 1, italics added.)

Thus, the Legislative Counsel's reference to property "subjected to" escape assessment loses significance. Since section 469 did not authorize refund or offset of overassessments before the 1978 amendments, there was no reason to distinguish between "subjected to" and "subject to." We therefore disagree with appellants' assertion that the Legislative Counsel's comment has "unmistakable meaning" of circumstances where an escape assessment has been levied.

We see nothing in the legislative history suggesting administrative review is available where an escape assessment is actually imposed, but not where an escape assessment wipes out a potential postaudit refund to the taxpayer.

We have reviewed the legislative history and find nothing inconsistent with our interpretation that a taxpayer is entitled to administrative review when an audit discloses property subject to an escape assessment, i.e., property that has been underassessed or unassessed, and there is no requirement that an escape assessment actually be levied as a prerequisite to administrative review.

Appellants, in a March 20, 2000, reply to an amicus curiae brief, ask us to take judicial notice of (1) a letter to the Governor from the author of the 1978 bill to amend sections 469 and 1605, and (2) a letter to the Governor from a consultant to the State Bar taxation section (which apparently sponsored the 1978 bill). However, appellants fail to show these letters are cognizable legislative history. (*Quintano v. Mercury Casualty Co., supra,* 11 Cal.4th 1049, 1062 [statements of individual legislator, including bill's author, are generally not considered in construing a statute, as the court's task is to ascertain the intent of the Legislature as a whole]; *California*

*Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 700-701 [170 Cal.Rptr. 817, 621 P.2d 856] [letters to Governor, even from bill's author, do not necessarily reflect *Legislature*'s intent].) The letters do not state that the views expressed therein were presented to the legislators who voted on the bill. Appellants' request for judicial notice of these materials is denied.

Appellants cite a 1978 letter from SBE to the Governor opposing the 1978 amendment which added the "subject to" language to sections 469 and 1605 (Stats. 1978, ch. 732, §§ 1, 4, pp. 2287-2288, 2289-2290). We treat this citation as a request for judicial notice of the letter, which we grant. This letter is not helpful to appellants. As SBE points out in its amicus curiae brief supporting Heavenly Valley in this appeal, the letter indicated SBE interpreted the bill to allow administrative review if the assessor "proposes to levy" an escape assessment—i.e., that an escape assessment need not actually be levied.

Appellants suggest SBE's employee testified at the Heavenly Valley's administrative hearing that SBE sided with appellants' interpretation before 1984. We do not read the record that way, but even assuming appellants are right, a pre-1984 opinion by SBE would obviously carry little weight, in view of SBE's 1984 LTA reaching an opposite conclusion—a conclusion that remains the SBE's current position. Indeed, SBE has filed an amicus curiae brief in support of Heavenly Valley's position in this appeal that the term "property subject to an escape assessment" does not require enrollment of an escape assessment in order to trigger the administrative appeal provisions of section 469.

Appellants argue we should not defer to the 1984 LTA issued by the SBE. Appellants assert the SBE interpretation of the statutory language "property . . . subject to escape assessment" is not entitled to deference because LTA's are advisory only, SBE held a contrary position before 1984, and the trial court erred in giving too much deference to the 1984 LTA under *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 576 [38 Cal.Rptr.2d 139, 888 P.2d 1268]. Appellants cite case law where courts rejected SBE interpretations concerning other matters. Appellants argue their own interpretation should carry more weight, because it is the county entities which deal most intimately with these matters (though Gov. Code, § 15606, subd. (e), authorizes SBE to issue instructions to assessors "to promote uniformity throughout the state and its local taxing jurisdictions in the assessment of property for the purposes of taxation"). However, although we note SBE has accumulated a " 'body of experience and informed judgment' in the administration of the business tax law 'to which the courts and

litigants may properly resort for guidance' " (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 14 [78 Cal.Rptr.2d 1, 960 P.2d 1031]), we do not defer to the SBE's interpretation in the 1984 LTA but independently reach the same conclusion.

■ Our interpretation is also consistent with the reasoning in the Attorney General opinion, 80 Ops.Atty.Gen. 322, *supra*, which we have previously described and which is entitled to great weight. (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 17 [270 Cal.Rptr. 796, 793 P.2d 2]; *Planned Parenthood Affiliates v. Van De Kamp* (1986) 181 Cal.App.3d 245, 263 [226 Cal.Rptr. 361].)

Heavenly Valley asks us to take judicial notice of proposed legislation in 1999 (Assem. Bill No. 1643 (1999-2000 Reg. Sess.)), which would have amended section 469 to require enrollment of an escape assessment as a prerequisite to an administrative appeal, but which was withdrawn by the author. Heavenly Valley claims appellants lobbied in favor of this bill, which according to Heavenly Valley means appellants realized existing law does not require the enrollment of an escape assessment. However, the documents for which Heavenly Valley seeks judicial notice reflect that the proposed legislation was a response to the opinions of the Attorney General and SBE interpreting "subject to an escape assessment" as not requiring actual levy of an escape assessment. Thus, even assuming appellants supported Assembly Bill No. 1643, their support would not constitute any kind of admission. Since the bill was apparently withdrawn rather than voted down, we draw no inference of legislative intent from it. We therefore deny Heavenly Valley's request for judicial notice of the 1999 proposed legislation, Assembly Bill No. 1643.

■ To sum up, when we view the statutory scheme, together with its cognizable legislative history, we conclude the Legislature intends to grant a taxpayer the right of administrative review, by elected representatives, where the assessor's audit discloses property that was underassessed or unassessed, regardless of whether or not an escape assessment is actually enrolled. The Legislature has apparently concluded the assessor ought not to be able unilaterally to increase the value of a taxpayer's taxable property without a check on that power by CBOE.

We conclude Heavenly Valley was entitled to administrative review following the audit. As provided by statute, the review would encompass the original assessment for the years that were the subject of the audit, except for any property which had already been equalized for the years in question by CBOE. (§ 1605, subd. (e).)

### III. *Remedy*

██ Appellants argue the trial court erred in ordering adopted Heavenly Valley's opinion concerning market value of its property rather than remanding for an administrative hearing. We agree.

As indicated, section 1604, subdivision (c) (see fn. 11, *ante*), provides (with exceptions inapplicable here) that the taxpayer's opinion of market value shall be the value upon which taxes are to be levied for the tax year covered by the taxpayer's application for reduction, if the county assessment appeals board "fails to hear evidence *and* fails to make a final determination on the application for reduction in assessment of property within two years of the timely filing of the application." (Italics added.)[15] Adoption of the taxpayer's opinion of market value does not prevent the board from thereafter making a determination of value, but the board's determination will not apply retroactively to the tax year covered by the application.[16]

In construing section 1604, we look first to the words of the statute. (*Burden v. Snowden, supra*, 2 Cal.4th at p. 562.) Adoption of the taxpayer's opinion of market value under section 1604 is triggered where the county assessment appeals board "fails to hear evidence and fails to make a final determination on the application . . ." within two years of the timely filing of the application. Heavenly Valley argues that because the statute refers to hearing "evidence," the board must hear evidence on the underlying tax dispute and make a final determination on those merits in order to avoid having to adopt the taxpayer's opinion of property value. Thus, according to Heavenly Valley, the hearing and final determination on jurisdictional grounds that occurred in this case did not satisfy the statute, and the board must pay the penalty for its erroneous decision that it lacked jurisdiction.

We disagree with Heavenly Valley. The statute does not require that the hearing of evidence and final determination must be on the merits of the underlying tax dispute. We see no reason why the statute should not apply to a hearing on jurisdictional grounds, at which the parties would presumably be able to introduce evidence relevant to the question of jurisdiction if appropriate.

---

[15]The board may also voluntarily choose this option by notifying the taxpayer that it will accept the taxpayer's opinion of value rather than hold a hearing. (§ 1604, subd. (e).)

[16]The statute provides that if the taxpayer's opinion concerning value is placed on the assessment roll pursuant to section 1604, subdivision (c), "that value shall remain on the roll until the county board makes a final determination on the application. The value so determined by the county board, plus appropriate adjustments for the inflation factor, shall be entered on the assessment roll for the fiscal year in which the value is determined. No increased or escape taxes other than those required by a purchase, change in ownership, or new construction, or resulting from application of the inflation factor to the applicant's opinion of value shall be levied for the tax years during which the county board failed to act." (§ 1604, subd. (d).)

Thus, the legislative history, of which we take judicial notice at Heavenly Valley's request (see fn. 18, *post*), supports our construction. In 1982, subdivision (c) was added to section 1604, to provide the board must accept the taxpayer's opinion of value if the board "fails to hear evidence" on the taxpayer's application. (Stats. 1982, ch. 7, § 3, p. 7; *id.*, ch. 1465, § 11.5, p. 5645.) (The reference to a failure to make a final determination was added later.) The 1982 legislative history reflects the bill would "require that if the county assessment appeals board fails to hear a petition for reduction within two years of filing, the taxpayer's opinion of the property's market value shall prevail . . ." and "[t]he purpose of this provision is to prevent appeals from being tied up for extended periods without a hearing." (Assem. Rev. & Tax. Com., Analysis of Assem. Bill No. 1603 (1981-1982 Reg. Sess.) Apr. 29, 1981, p. 4.) Thus, the purpose was to prevent appeals from being tied up, not to assure taxpayers a hearing on the underlying merits despite lack of jurisdiction. We conclude section 1604 does not require adoption of the taxpayer's opinion of value where the board has held a hearing and made a final determination on jurisdictional grounds.

This conclusion is in accord with the purpose of section 1604. "The purpose of section 1604 is to assure a prompt resolution of applications for reduction of assessments. [Citation.] The section is designed to prevent bureaucratic delay and forestalling of the return of taxpayer's money, by providing a significant disincentive for a taxing authority to delay resolution of the case. [Citation.]" (*United Enterprises, Ltd. v. Assessment Appeals Bd.* (1994) 22 Cal.App.4th 152, 159 [27 Cal.Rptr.2d 279].)

The trial court agreed with Heavenly Valley's position that section 1604, subdivision (c), requires adoption of the taxpayer's opinion of market value where a county assessment appeals board makes an erroneous determination that it lacks jurisdiction to hear the merits of an administrative appeal, such that no hearing on the merits is held within the two-year period. We disagree.

■ County boards of equalization or assessment appeals boards are quasi-judicial bodies which have authority to pass upon questions of their own jurisdiction in the first instance. (*County of Sacramento v. Assessment Appeals Bd. No. 2* (1973) 32 Cal.App.3d 654, 663, 673 [108 Cal.Rptr. 434].) Where an administrative agency erroneously decides it lacks jurisdiction, the proper remedy is generally to remand for the administrative agency to act. (*Sunrise Retirement Villa v. Dear* (1997) 58 Cal.App.4th 948, 955-956 [68 Cal.Rptr.2d 416].) *Sunrise* said that where the county assessment appeals board erred in refusing to exercise jurisdiction, "the trial court could have and should have issued the writ to compel it to so act. (*County of Sacramento, supra*, 32 Cal.App.3d 654 [assessment appeals board erroneously

ruled it had no jurisdiction]; *Main & Von Karman Associates v. County of Orange* (1994) 23 Cal.App.4th 337, 343-344 [28 Cal.Rptr.2d 432] [assessment appeals board used wrong methodology and refused to admit competent evidence; mandate issued to conduct further proceedings]; *California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1150 [43 Cal.Rptr.2d 693, 899 P.2d 79] [administrative agency failed to adjudicate grievance within the statutory time limit].)" (*Sunrise Retirement Villa v. Dear, supra,* 58 Cal.App.4th 948, 955-956.)

 CBOE made a final determination on Heavenly Valley's applications for reduction in assessment; the determination was that CBOE lacked jurisdiction.[17] This determination satisfied the purpose of section 1604, to secure prompt resolution of taxpayer claims.

Heavenly Valley's position—that in order to avoid the section 1604 penalty, the hearing must be on the merits of the underlying valuation dispute—is extreme. Under that construction, every county assessment appeals board that determines it lacks jurisdiction would have to go ahead (assuming for the sake of argument that it retained authority to proceed) and hold a hearing on the merits of the valuation issues anyway and make a final determination on the merits just to protect its rights on the off chance that a taxpayer will pursue court action and obtain a reversal on the jurisdictional question. To require such potentially superfluous proceedings is nonsensical.

Heavenly Valley cites authority that administrative action based on legal error is void. Heavenly Valley appears to believe that judicial reversal of CBOE's jurisdictional decision would void the jurisdictional hearing held by CBOE, for section 1604 purposes. Heavenly Valley asserts CBOE has now lost jurisdiction to hold an evidentiary hearing on the underlying merits of the valuation dispute. We disagree, because section 1604 was clearly satisfied by the hearing and determination that jurisdiction was lacking.

Under a separate heading that its own conduct was always ethical, Heavenly Valley argues that, despite rules prohibiting reconsideration, an administrative agency retains jurisdiction to correct an erroneous (hence void) conclusion of law. (*Cal. Teachers Assn. v. Butte Community College Dist.* (1996) 48 Cal.App.4th 1293, 1304 [56 Cal.Rptr.2d 269].) Heavenly Valley argues CBOE could have corrected its erroneous decision concerning jurisdiction at any time before expiration of the two-year period for completion

---

[17]Amicus curiae California Assessors' Association argues the two-year period is a statute of limitations subject to equitable *tolling*. This argument appears under the heading that Heavenly Valley is equitably *estopped* from invoking section 1604 because it could have sought an immediate writ instead of waiting out the two-year period. Each point in an appellate brief should appear under a separate heading, and we need not address contentions not properly briefed. (Cal. Rules of Court, rule 15(a); *Live Oak Publishing Co. v. Cohagan* (1991) 234 Cal.App.3d 1277, 1291 [286 Cal.Rptr. 198].)

of hearings on taxpayer claims. We need not address this point, since its presentation violates the rule requiring that points be presented under appropriate headings. (Cal. Rules of Court, rule 15(a).) Moreover, we see no merit to this point, which responds to appellants' argument that CBOE was precluded from taking further action by an SBE regulation applicable to county boards, which provides "[t]he decision of the board upon an application is final. The board shall not reconsider or rehear an application or modify a decision unless [there is ministerial clerical error, or the decision was entered based on the applicant's failure to appear and the applicant furnishes excusable good cause of the failure to appear]." (Cal. Code Regs., tit. 18, § 326.) Even assuming CBOE could have reconsidered its decision on the jurisdictional question, it was not required to do so, and its failure to do so does not warrant dispensing with a hearing on the merits of the valuation issues. *Mitchell v. County of Los Angeles* (1997) 60 Cal.App.4th 497 [70 Cal.Rptr.2d 476], held remand for a new administrative hearing was the proper remedy, where the county assessor's evidence of property valuation in the first administrative hearing was legally inadmissible. (*Id.* at pp. 505-506.) In response to the taxpayer's argument that the county should not be given "two bites of the apple," *Mitchell* responded that despite the appeal of the argument, there is an "overriding policy concern" that "all property should be properly assessed and bear its fair share of property taxes." (*Id.* at p. 506.) Heavenly Valley argues *Mitchell* is distinguishable because it did not involve section 1604; however, that distinction is without consequence. Heavenly Valley also points out the taxpayer's expert in *Mitchell* testified to a value $600,000 more than what the taxpayer put on his application, and the appellate court said it saw "no fairness in a situation where a taxpayer's low-ball valuation would have to be mandatorily accepted because the assessor, for whatever valid or invalid reason, did not comply with [a rule in California Code of Regulations]." (*Mitchell,* at p. 506.) Heavenly Valley suggests its own conduct was exemplary, justifying the sanction of requiring CBOE to accept Heavenly Valley's opinion of property value. However, remand for an administrative hearing is appropriate because Heavenly Valley presents nothing to defeat the "overriding policy concern" that "all property should be properly assessed and bear its fair share of property taxes." (*Ibid.*)

Heavenly Valley cites *International Medication Systems, Inc. v. Assessment Appeals Bd.* (1997) 57 Cal.App.4th 761 [67 Cal.Rptr.2d 394], that compliance with the constitutional requirement for an equalization hearing is not met unless the "substance and form" of the hearing is granted to the taxpayer. (*Id.* at p. 767 [by failing to give proper notice, board did not acquire jurisdiction over taxpayer's application and had no power to continue and conduct evidentiary hearing without taxpayer's consent].) Heavenly Valley argues evidence on the underlying merits of valuation must be

presented in order to avoid the penalty of section 1604. However, the cited case did not involve a jurisdictional hearing and does not mandate imposition of a section 1604 penalty for an erroneous decision on jurisdiction.

Heavenly Valley cites inapposite authority holding that a trial court lost jurisdiction to proceed with a new trial where no effective order granting a new trial was rendered within the statutory period, such that the motion was denied by operation of law. That principle has no bearing on the case before us.

Heavenly Valley argues it will be prejudiced by remand for an administrative hearing, because Heavenly Valley has "severe doubts" that CBOE can be fair. Heavenly Valley fails to cite any authority that its doubts constitute grounds for decision by this court.

The parties dispute whether the administrative decision of no jurisdiction was made in good faith, with appellants characterizing the decision as one made in good faith, and Heavenly Valley disputing that characterization. Since the trial court made no finding of bad faith, and Heavenly Valley does not develop any argument that a finding of good faith was required, we need not address this matter.

We conclude section 1604's requirements of a hearing and final determination were met in this case, and the trial court should have remanded the case for an administrative hearing on property valuation rather than ordering adopted the taxpayer's opinion of value.

We therefore need not address the parties' other arguments, e.g., appellants' argument that section 1604 does not apply because of the "pending litigation" exception contained therein, or appellants' argument that BOE could not have undertaken further action after it determined it lacked jurisdiction, because SBE rules prohibit the board from reconsidering its decision, or Heavenly Valley's argument that CBOE should have sought judicial review of its own jurisdictional decision in a declaratory relief action.

We conclude the trial court erred in ordering adopted Heavenly Valley's opinion concerning valuation. The proper remedy was to remand for an administrative hearing.[18]

---

[18]Along with its petition for rehearing, Heavenly Valley submits legislative history of section 1604 from 1982 and 1986, and requests that we take judicial notice of this legislative history. Heavenly Valley suggests the legislative history supports its position that in order to avoid the section 1604 penalty, the hearing must be on the merits of the underlying valuation dispute, rather than a hearing and final determination that jurisdiction is lacking. We grant the request for judicial notice but see nothing in the legislative history helpful to Heavenly

## IV. *Laches*

Appellants argue the trial court erred in refusing to apply laches against Heavenly Valley, and Heavenly Valley should not be allowed to invoke the automatic adoption of its opinion concerning valuation by intentionally delaying in filing its writ petition in the trial court after CBOE decides it lacks jurisdiction.

 "Laches bars a mandamus action if the petitioner delays in initiating or prosecuting an action, and prejudice to the respondent results. [Citation.] 'The prejudice must be caused by the delay and may be of either a factual nature or some prejudice in the presentation of a defense.' [Citation.]" (*San Bernardino Valley Audubon Society v. City of Moreno Valley, supra,* 44 Cal.App.4th at p. 605.) Laches is a question of fact for the trial court, though it may be decided as a matter of law where the facts are undisputed. (*Ibid.*)

We have decided that the trial court should have remanded the case for an administrative hearing rather than automatically adopt the taxpayer's opinion of property value. Since we are ordering the matter remanded for an administrative hearing on valuation, appellants are not prejudiced by Heavenly Valley's action. For that reason, we reject appellants' laches argument.

We need not address amicus curiae's arguments concerning equitable estoppel or equitable tolling, which Heavenly Valley protests as new theories raised inappropriately on appeal.

### DISPOSITION

The judgment is reversed insofar as it adopts plaintiff Heavenly Valley's opinion of property valuation. The trial court shall issue a writ of mandate directing defendant El Dorado County Board of Equalization to hear and determine plaintiff's administrative appeal on the merits. The judgment is otherwise affirmed. The parties shall bear their own costs on appeal.

Raye, J., and Hull, J., concurred.

A petition for a rehearing was denied December 20, 2000, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied March 14, 2001.

---

Valley's position. To the contrary, the legislative history supports the board's position, as we explain in the text of this opinion. Heavenly Valley also asks that we take judicial notice of State Board of Equalization rule 309. However, Heavenly Valley fails to persuade us that rule 309 helps its case, and we therefore decline the request.