Filed 3/6/13  Stevenson v. Dougherty CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| DEAN STEVENSON et al., | C067140 |
| Plaintiffs and Appellants, | (Super. Ct. No. SCV21302) |
| v. | |
| GLENN DOUGHERTY et al., | |
| Defendants and Respondents. | |

Following a bench trial on plaintiffs' complaint for breach of a partnership agreement and related claims, the trial court entered judgment primarily for the defendants, concluding there had been no breach of contract or breach of fiduciary duty. However, the court did enter judgment for plaintiffs on their claims for dissolution of the partnership and an accounting.  Plaintiffs appeal.  We affirm the judgment of the trial court.

1

FACTS AND PROCEEDINGS

Plaintiff Dean Stevenson is in the business of designing custom homes. Defendant Glenn Dougherty is a general contractor in the business of constructing homes. The two met in 1989 and worked together on various home construction projects thereafter.

We note that, after first introduction, the parties will sometimes be referred to herein by their first names for the sake of simplicity and clarity.

In 2001, Dean and Glenn entered into an oral partnership agreement with Wayne Jensen and his son Matt Jensen for the development of homes (the Jensen partnership). Under this agreement, Dean would design the homes and get necessary government approvals, Wayne would provide financing for the project, Glenn and Matt would build the homes, and the four would share profits evenly. However, before the purchase of any property for development, Glenn and Wayne had a falling out and the partnership dissolved.

Dean and Glenn then decided to proceed with the plan without the Jensens. Prior to November 17, 2003, Dean and his wife, plaintiff Terina Stevenson, (hereafter collectively the Stevensons) entered into an oral partnership agreement with Glenn and his wife, defendant Judee Dougherty, (hereafter collectively the Doughertys) for the purpose of buying raw land, subdividing it, building homes thereon, and selling the homes. The parties also agreed Judee, who was a licensed real estate agent working at the time for defendant Valley of California, Inc., doing business as Coldwell Banker (Coldwell Banker), would represent the partnership in the purchase of property.

Under the terms of the partnership agreement, the Stevensons and the Doughertys (collectively the partners) would share profits evenly, after payment to each for contributions of money and time to the enterprise. They also anticipated eventually forming a limited liability company (LLC) to replace the partnership.

2

On November 17, 2003, the partnership offered to purchase a parcel of property located at 660 Virginiatown in Lincoln (the property) for $200,000. They eventually agreed with the sellers on a purchase price of $205,000. However, before the close of escrow, the partners agreed the Stevensons' names would not be included on the offer and the grant deed, at least in part because Dean had tax liens against him stemming from a prior business.

The Doughertys contributed $155,000 toward the purchase price and the Stevensons contributed the remainder, in part using funds obtained from their son, plaintiff Nicholas Stevenson. Escrow closed on February 18, 2004, with title to the property being taken in the names of the Doughertys alone.

The parties thereafter went about obtaining the necessary permits to subdivide the property into individual lots, with Dean doing most of the work. They also attempted to purchase adjacent property in order to increase the number of lots they could create and to enter into a joint venture with another entity, Sundance, that was in the process of buying other adjacent property.

Following a meeting with Sundance on April 25, 2006, Glenn informed Dean that he did not think an even split of the partnership was fair, given the uneven contributions toward purchase of the property. He proposed instead a 75/25 split between the Doughertys and the Stevensons.

The parties thereafter were unable to agree on how to proceed with their partnership or the development of the property. They discussed a possible buyout of the Stevensons' interest in the partnership, but were unable to reach any agreement on the terms.

The Stevensons and Nicholas (hereafter collectively plaintiffs) initiated this action against the Doughertys and Coldwell Banker, alleging seven causes of action. Regarding Nicholas, the complaint alleged he had become a partner with the others when he contributed funds toward purchase of the property.

3

The first cause of action alleges breach of the partnership agreement by virtue of the Doughertys having repudiated the even split of the partnership, delayed development of the property, and other things. The second cause of action alleges breach of fiduciary duty both as to the Doughertys as partners and as to Judee and Coldwell Banker as real estate agents for plaintiffs.

The third cause of action alleges fraudulent misrepresentations as to the Doughertys' intent to finance the purchase of the property, transfer ownership of the property to an LLC, and diligently pursue development, among other things. The fourth cause of action alleges negligent misrepresentation of these same things.

The fifth cause of action seeks dissolution of the partnership, while the sixth cause of action (erroneously labeled the seventh) seeks an accounting.

The seventh cause of action (erroneously labeled the eighth) alleges negligence by Judee and Coldwell Banker in failing to protect plaintiffs' interest in the partnership property.

Following a bench trial, the trial court issued a judgment against Nicholas on all claims, concluding he had not become a party to the partnership. The court entered judgment for the Stevensons on their dissolution and accounting claims, but for the Doughertys and Coldwell Banker on all other claims.

On the first cause of action, for breach of contract, the court found the Doughertys did not repudiate the partnership agreement by proposing a different split of ownership. Rather, this was a proposed amendment to the agreement, which the Stevensons rejected. The court also found no breach by virtue of delays in the development, which delays, the court concluded, were for reasons other than any wrongdoing by the Doughertys.

The court also found no breach of fiduciary duty, as alleged in the second cause of action, for the same reasons there had been no breach of contract.

The court found no breach of fiduciary duty by Judee or Coldwell Banker for failing to advise the Stevensons to seek legal advice before having their names taken off

4

the title to the property.  The court concluded these real estate defendants met their applicable standard of care.  The court also concluded the Stevensons were not harmed in any event, because the property remains an asset of the partnership, regardless of the names on the title.

The court also rejected plaintiffs' misrepresentation claims, finding no misrepresentations as alleged and nothing by which the Stevensons were misled.  The court also found no negligence by Judee or Coldwell Banker for the same reasons it rejected plaintiffs' claim for breach of fiduciary duty by those defendants.

On the fifth and sixth causes of action, the court concluded the Stevensons are entitled to relief.  The court ordered the partnership dissolved and the property sold, with the proceeds used to repay the initial investments with interest, followed by reimbursement for the parties' time on the venture.  The court retained jurisdiction to assure a proper accounting.

DISCUSSION

I

*Pertinent Facts*

Before addressing the contentions of the parties, a few words on the facts applicable to this matter are necessary.  The three plaintiffs, acting in propria persona, have filed separate appellate briefs.  Dean has included in his opening brief a 16-page summary of the facts, which the other plaintiffs have adopted as their own.  However, in many instances, Dean has provided no citation to the record for his factual assertions, and some of the citations he does provide do not in fact say what he indicates.

Further, and more importantly, most of plaintiffs' contentions concern the sufficiency of the evidence to support the trial court's findings.  In such case, we consider the evidence in the light most favorable to the judgment.  (*Bunch v. Hoffinger Industries, Inc.* (2004) 123 Cal.App.4th 1278, 1303.)  A party challenging sufficiency of the

5

evidence has an obligation to summarize the evidence on the points raised, *both favorable and unfavorable*. (*Roemer v. Pappas* (1988) 203 Cal.App.3d 201, 208.) Failure to do so may be considered a forfeiture of the contentions raised. (*Oliver v. Board of Trustees* (1986) 181 Cal.App.3d 824, 832.) In many instances, Dean has provided a one-sided recitation of the evidence that fails to meet his appellate obligations.

In addition to the foregoing, many of plaintiffs' citations are not to the evidence in the record but to the trial court's amended statement of decision, the same decision they now challenge as incorrect. They also cite documents in the record that were used as exhibits in the trial, but fail to cite any testimony authenticating those documents.

For example, on the issue of whether the parties agreed to form an LLC, plaintiffs assert: "As the partners had not yet formed the LLC prior to an offer being made to purchase the property, the offer was made in their personal names, with the express agreement that the LLC would be formed during escrow, with the property then assigned to the LLC, prior to the close of escrow." Plaintiffs cite as support a portion of the amended statement of decision. However, that portion does not pertain to the agreement between the parties but the earlier agreement on the Jensen partnership. Plaintiffs also cite Glenn's testimony. However, Glenn testified that, while the parties agreed "in theory" to form an LLC, there were no discussions regarding timing.

Plaintiffs also assert that, during escrow, Glenn changed the terms of the partnership agreement by insisting that the Stevensons contribute to the purchase price. However, plaintiffs cite no evidence of any agreement that the Doughertys would provide all the financing. The closest they come is the testimony of the real estate agent for the Jensen partnership, Robyn Buzdon, who explained that, after the Jensen partnership dissolved, Glenn told Buzdon to proceed with finding a property to purchase and he would provide the financing.

Plaintiffs next assert: "In spite of Glenn's changing of the terms they had originally agreed to months earlier, Dean & Terina then invested $6,500 and arranged for

6

their son, Nicholas, to join in the partnership and invest $42,000, in order to have the money necessary to close escrow on the property." Plaintiffs' only record citation is to the amended statement of decision. However, the trial court said nothing about the Stevensons arranging for Nicholas to become a partner in the venture. On the contrary, the trial court specifically found Nicholas did not become a partner.

As to the decision to take the Stevensons' names off the title to the property, plaintiffs assert this had been done at Glenn's request. Plaintiffs also assert the parties agreed to modify their agreement to provide that an LLC would be formed "as soon as possible after escrow closed." However, plaintiffs provide no record citation for their assertion that Glenn requested the removal of the Stevensons' names from the purchase, and the citations they provide for their assertion that the parties agreed to form an LLC as soon as possible do not so state. Dean testified that the parties *discussed* forming an LLC as soon as they could. However, he did not say there was any agreement to that effect. Further, plaintiffs ignore contrary testimony of the Doughertys that removal of the Stevensons' names from the title had been at Dean's request because of tax liens, and Glenn's testimony that there had been no discussions as to timing in forming an LLC.

Further discrepancies regarding the evidence will be discussed in connection with plaintiffs' various contentions on appeal.

## II

### *Removal of Stevensons from Purchase Documents*

On their claim for breach of fiduciary duty by Judee and Coldwell Banker, plaintiffs take issue with the following statement by the trial court in its amended statement of decision: "The entire issue of title being taken solely by the Doughertys is an issue of Dean's own making. In fact, the manner of taking title was an accommodation to him."

7

Plaintiffs assert the foregoing passage is based on speculation by the court that Dean was trying to evade paying taxes and "is not supported by, and is at complete odds with, the uncontroverted facts." (Bolding omitted.) According to plaintiffs, it is undisputed Dean did not ask to have title placed in his son's name, as he might have done, since Nicholas was investing in the property as well. Plaintiffs assert this all could have been avoided if an LLC had been formed. Plaintiffs further assert: "[T]he manner of taking title was an accommodation to Coldwell Banker's agents, not the clients. The agents simply didn't want Dean's tax liens to attach to the property they were co-buying . . . ."

Plaintiffs also take issue with the following related statement by the trial court: Consistent with Dean's desire not to be on the title to the property, "in 2001 Dean arranged for his son Nicholas, who was then still a teenager, to take title to the family's home in Granite Bay, thus minimizing the chance that the property would be located to satisfy tax liens against Dean." Plaintiffs assert this statement too is based on speculation and that there was nothing dishonest in Nicholas purchasing the family home.

Finally, plaintiffs contend that, even assuming they were trying to conceal their ownership of the property to evade having it taken to pay taxes, defendants too were complicit in this arrangement.

Regarding the purchase of the Stevensons' family home by Nicholas, plaintiffs argue there was nothing improper in this arrangement. Plaintiffs assert they had been living in the home for several years as tenants when it became available for sale. However, because of Dean's tax liens, the Stevensons could not obtain financing to purchase it. Therefore, Nicholas, who was working at Intel at the time, did so. Plaintiffs assert this was a good investment for Nicholas.

As support for the foregoing, plaintiffs cite the testimony of Nicholas and Terina. Nicholas testified he purchased the home in 2001, the family had lived in the home before its purchase, and he was working full time at Intel at the time. Terina testified

8

Nicholas purchased the property because of the tax liens and because it was a good investment for him. However, there is nothing in this evidence that the Stevensons had been leasing the home before its purchase by Nicholas. Thus, the trial court could reasonably infer Nicholas had purchased it from his parents. There is also nothing in the foregoing evidence about Nicholas purchasing the home because the Stevensons could not obtain financing. Terina was asked: "Okay. I want to go back to your family home. The reason that the family home was in your son Nick's name was because of your tax liens; isn't that right?" She answered, "Yes." Although Terina went on to testify the purchase was a good investment for Nicholas, she gave no further details. Under these circumstances, the trial court could reasonably infer Nicholas purchased the property to keep it out of the names of the Stevensons in order to avoid having it claimed for taxes.

At any rate, the issue here is not whether the Stevensons' names were kept off the title to their family home to avoid tax liens, but whether the Stevensons requested that their names be kept off the title to the property at issue in this matter because of tax liens. The trial court so found, and the issue on appeal is whether that factual finding is supported by substantial evidence. That finding supports at least in part the court's ultimate conclusion that Judee and Coldwell Banker did not breach any fiduciary duty owed to plaintiffs in facilitating this change in the purchase.

On a claim based on the sufficiency of the evidence, our review is limited to a determination of whether the record contains evidence of "ponderable legal significance" which, when coupled with all reasonable inferences therefrom, supports the judgment of the trial court. (*Beck Development Co.* v. *Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1203.)

The record here contains sufficient evidence to support the trial court's finding. Judee testified she prepared the addendum removing the Stevensons from the purchase based on what she had been told by Glenn. Glenn in turn testified he requested Judee to prepare the addendum on Dean's instructions. According to Glenn, Dean called him and

said he needed to be taken off the title and to have Judee prepare the necessary documentation. Glenn understood at the time that Dean's request was based on the tax liens. Dean himself acknowledged the tax liens were implicated in the decision to remove the Stevensons from the purchase documents, although he denied it was his idea to do so.

While there is certainly contrary evidence in the record, our job is not to weigh the evidence and decide which is more convincing. That job was for the trial court. Where the evidence shows the trial court could have gone either way on an issue, our job is done. We accept the trial court's findings on the evidence.

And this is not changed by the fact the Doughertys were fully aware and complicit in the Stevensons' scheme to try and avoid having their tax liens attach to the property. The question here is not whether either party acted improperly or unethically. The question is whether, given the fact the Stevensons requested that their names be removed from the purchase documents, the real estate professionals owed them any duty of care to explain the significance of such removal. We discuss that issue later.

Furthermore, the basic premise of plaintiffs' argument on the trial court's finding is that the removal of the Stevensons' names from the purchase documents adversely impacted their rights in the property. However, as the trial court recognized, and we agree, the names on the title documents were immaterial. The property was clearly purchased by the partnership and remained partnership property throughout this matter. Thus, regardless of why the Stevensons' names were removed from the documents, their partnership rights were not adversely affected.

## III

### *Adequacy of the Dissolution Order*

The trial court ruled for plaintiffs on their claims for dissolution of the partnership and for an accounting. Plaintiffs contend the court nevertheless failed to provide for

proper disposition of the partnership assets and, therefore, the judgment must be amended. They raise seven separate arguments in this regard, which we shall address in turn.

The trial court found plaintiffs failed to request that they be dissociated from the partnership within the meaning of Corporations Code section 16601. That section reads in relevant part: "A partner is dissociated from a partnership upon the occurrence of any of the following events. [¶] (1) The partnership's having notice of the partner's express will to withdraw as a partner or on a later date specified by the partner." According to the court, there had been "no written statement--'express will'--by Dean and Terina to withdraw as partners . . . ." The court found instead that any dealings among the partners after a dispute arose were attempts to settle their dispute as to the terms of the partnership. According to the court: "Given the partners [*sic*] widely divergent views as to terms of the partnership, and the value of partnership property, it was quite reasonable for defendants to refuse the settlement demand and to allow the court to equitably determine the respective rights of the parties under the oral partnership agreement."

Plaintiffs contend the trial court "overlooked" the fact that this was a partnership at will from which a partner could dissociate at any time. (See Corp. Code, § 16602, subd. (a).) Not so. The court did not conclude the Stevensons could not dissociate from the partnership; it concluded they had not in fact done so.

Plaintiffs next contend the court erred in concluding the Stevensons had not given notice of an "express will" to dissociate because there was nothing in writing with specific language to that effect. We agree the court appears to have believed an express will to dissociate must be in writing. The court went on to analyze two pieces of correspondence which, it concluded, did not amount to a statement of express will to dissociate.

Plaintiffs assert the evidence as a whole shows the Stevensons expressed an intent to dissociate. We disagree. Assuming the Stevensons gave notice at some point of a

11

desire to withdraw from the partnership, what followed thereafter were negotiations, offers and counter-offers as to the terms of such withdrawal. While the Stevensons certainly had an absolute right to withdraw from the partnership, they did not have a right to dictate the terms of such withdrawal. The Stevensons did not simply withdraw from the partnership and let the chips fall where they may as to the ultimate buyout. They continued as partners while negotiating the terms of their withdrawal.

If, indeed, the Stevensons believed they had given notice of an intent to withdraw and to receive their share of the partnership value, and the Doughertys refused to let them do so, it would have been incumbent upon the Stevensons at that point to seek relief from the court for such refusal. Instead, the Stevensons continued to negotiate with the Doughertys over the terms of their withdrawal. It was only when those negotiations broke down that plaintiffs filed this action. And even then, plaintiffs did not claim a violation of Corporations Code section 16601 but instead sought a dissolution of the partnership.

In their arguments on appeal, plaintiffs nevertheless appear to assert a right to be awarded their share of the value of the partnership at the time of their request to dissociate. They cite Corporations Code section 16701, which reads in relevant part: "Except as provided in Section 16701.5 [relating to dissociations occurring within 90 days of a dissolution], all of the following shall apply: [¶] (a) If a partner is dissociated from a partnership, the partnership shall cause the dissociated partner's interest in the partnership to be purchased for a buyout price determined pursuant to subdivision (b). [¶] (b) The buyout price of a dissociated partner's interest is the amount that would have been distributed to the dissociated partner under subdivision (b) of Section 16807 [regarding winding up] if, on the date of dissociation, the assets of the partnership were sold at a price equal to the greater of the liquidation value or the value based on a sale of the entire business as a going concern without the dissociated partner and the partnership was wound up as of that date. . . ."

12

As explained above, plaintiffs did not seek relief under the foregoing provision in their complaint and, hence, their claim in that regard was not properly before the trial court.  Plaintiffs alleged defendants have engaged in conduct making it impracticable to continue the partnership and it is no longer possible to carry on the business in conformity with the partnership agreement.  They sought "a judicial determination that the partnership shall be deemed dissolved."  They further sought a winding up of the partnership business, a sale of the partnership's assets, and an accounting, with the proceeds divided according to the terms of the partnership agreement.  That is what the trial court attempted to do.

Plaintiffs' next contention regarding the terms of the dissolution is a jumble of unrelated arguments concerning the Doughertys' alleged breach of fiduciary duty and fraudulent misrepresentations.  For example, plaintiffs assert the evidence shows Glenn tried to coerce them into agreeing to a change in the terms of the partnership and used a bogus appraisal in an effort to buy them out at a discounted price.  Plaintiffs argue the trial court "ignored the obvious significance" of these acts and "absurdly concluded" they were immaterial because plaintiffs were not harmed thereby.  Plaintiffs also include a general discussion of the law relating to breach of the covenant of good faith and fair dealing and quote from Civil Code provisions on the tort of fraud.

To the extent plaintiffs' arguments are intended to assert that the trial court erred in rejecting their claims against the Doughertys for breach of the partnership agreement, breach of fiduciary duty and fraud, they are not properly before us.  Appellate briefs must state each contention raised under a separate heading.  (Cal. Rules of Court, rule 8.204(a)(1)(B).)  Where an appellate brief fails to include proper headings for contentions raised, those contentions need not be considered.  (*Heavenly Valley v. El Dorado County Bd. of Equalization* (2000) 84 Cal.App.4th 1323, 1346; *Live Oak Pub. Co. v. Cohagen* (1991) 234 Cal.App.3d 1277, 1291.)

Furthermore, plaintiffs' purported assertions that there is evidence supporting their various claims are not accompanied by a complete analysis of all the evidence on those issues, both favorable and unfavorable, or an explanation of how the trial court erred in rejecting those claims. It is not the obligation of this court to pick up the ball and run with it for plaintiffs.

While we recognize that plaintiffs are pursuing this appeal in propria persona, and therefore may not be familiar with the various rules and procedures applicable to this matter, a pro per litigant is entitled to the same, but no greater, consideration than other litigants and is held to the same rules of procedure. (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125-1126; *Bistawros v. Greenberg* (1987) 189 Cal.App.3d 189, 192-193.)

To the extent plaintiffs' contentions instead go to whether the Doughertys improperly precluded them from withdrawing from the partnership, that was not the basis of plaintiffs' dissolution claim. Plaintiffs never claimed the Doughertys improperly precluded them from withdrawing from the partnership and, hence, the Doughertys were never put on notice of an obligation to defend such a claim. The trial court made no findings in that regard.

"The rule is well settled that the theory upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant. (2 Cal. Jur., sec. 68, p. 237.)" (*Ernst v. Searle* (1933) 218 Cal. 233, 240-241.)

Plaintiffs next contend the trial court improperly placed the burden on them to prove their various claims, when the burden should instead have been on the Doughertys to disprove them, given the Doughertys' greater access to the relevant evidence. They argue: "Here, the Doughertys had almost exclusive availability and access to the information and financial records of the property purchase, title, reasons for the title not

14

being assigned to the LLC, the reasons for the amendment dismissing the Stevensons, the reasons for their attempt to restructure the partnership, their reasons for stopping the project, [and] their reasons why their buy out [*sic*] offer was so much lower than their partners were entitled to."

Once again, plaintiffs' arguments have no bearing on their dissolution or accounting claims but instead concern whether the trial court erred in denying their other claims. But because plaintiffs have not presented these arguments under appropriate headings, they are not properly before us.

Plaintiffs next contend the trial court erred in failing to award them damages pursuant to Corporations Code section 16701 in accordance with their purported earlier dissociation from the partnership. However, as we have explained, there was no such dissociation and, in any event, this was not the basis of plaintiffs' complaint or the theory on which this matter was tried. Hence, plaintiffs have forfeited any such claim.

Plaintiffs contend the trial court erroneously awarded interest on the amounts contributed by the partners at a rate of 7 percent. They argue the proper rate should have been 10 percent, as specified in Civil Code section 3289. Subdivision (b) of that section reads: "If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach." Plaintiffs further argue that, because defendants attempted to charge 15 percent interest on their contribution to the partnership, which is above the maximum allowed by law, they are entitled to no interest whatsoever. They cite article XV, section 1 of the state Constitution, which establishes a maximum rate that may be charged on a non-consumer loan as the higher of 10 percent or 5 percent over the applicable Federal Reserve Bank rate. Plaintiffs argue the maximum rate under this formula was 11.25 percent.

The Doughertys disagree with plaintiffs' assertion that they are not entitled to any interest because they charged a usurious rate of 15 percent. Plaintiffs cite nothing to

15

support their claim that Glenn demanded 15 percent interest on his investment in the partnership. The Doughertys, for their part, cite Glenn's testimony, where he indicated he had been paying 15 percent to another investor and assumed this would be an appropriate amount, but further indicated the parties had not agreed on an amount and he assumed a reasonable amount would be used. But even assuming defendants had proposed to use a 15 percent interest rate, this was merely a matter of negotiation between the parties. Defendants had no power to dictate the interest rate. A mere suggestion above the applicable usury rate does not bar any interest recovery whatsoever.

As for using 10 percent rather than the 7 percent used by the trial court, the Dougherty's have no objection to this, inasmuch as they contributed more than plaintiffs and hence would benefit thereby. However, plaintiffs' claim for a 10 percent interest rate is premised on an assumption that the parties made *loans* to the partnership. Plaintiffs cite Corporations Code section 16401, subdivision (e), which states: "A payment or advance made by a partner that gives rise to a partnership obligation under subdivision (c) or (d) constitutes a loan to the partnership that accrues interest from the date of the payment or advance." Subdivision (d) of that section reads: "A partnership shall reimburse a partner for an advance to the partnership *beyond the amount of capital the partner agreed to contribute*." (Italics added.)

There is some question here whether the amounts the parties initially contributed to the partnership for purchase of the property were capital contributions rather than loans. At any rate, the parties expressly agreed interest would be paid. They simply failed to specify the amount.

Civil Code section 3289, on which plaintiffs rely, applies where there has been a breach of contract. Here, as the trial court found, there was no breach of the partnership agreement. The question here is not the appropriate interest rate to apply upon a breach but the appropriate interest rate under the terms of the partnership agreement. The parties agreed to pay interest but failed to specify an amount. The trial court selected an amount

16

of 7 percent. The parties do not contend this was an unreasonable or unauthorized amount under the circumstances.

As their final contention regarding the dissolution and accounting claims, plaintiffs assert the trial court "failed to provide disposition of the property upon a sale consistent with it's [*sic*] own finding, except to speculate that a sale would not provide for any profits to be divided." In its order, the court stated: "The court will order that the partnership be dissolved and that partnership property be sold. The parties will be given an opportunity to meet and confer to see if they can agree on a plan for the dissolution and windup of the partnership, including sale or disposition of the property. After expenses have been reimbursed, proceeds of the sale shall provide for return of the partners' respective investments of $50,000 and $155,000. In the event the sale of the property does not provide for full return of those investment amounts, the partners shall be entitled to return of funds in the proportionate amount of their investments. Interest shall be applied at 7%. The parties are entitled to be reimbursed for their time in the project, subject to their being sufficient proceeds to allow for that, and subject to an accounting of their time, below."

Contrary to plaintiffs' assertion, the trial court did not speculate that there would be insufficient funds from sale of the property to reimburse the parties. It merely provided for how the proceeds would be divided were this to occur. Nevertheless, we agree the court could have been clearer as to how excess proceeds would be divided after payment of all expenses and reimbursement for all time and money contributed. However, in the context of the entire statement of decision, it is clear the court intended that such excess funds, i.e., the profits from the venture, would be divided equally among the partners. The court also did not specify a rate at which the partners' contributions of time would be reimbursed, apparently leaving that for the parties to work out. However, inasmuch as the court reserved jurisdiction to resolve the matter if the parties are unable to reach agreement on dissolution, the trial court will have an opportunity to clear this up

17

in further proceedings if necessary.  Thus, we find no error in the court's dissolution order.

## IV

### *Valuation of the Property*

Plaintiffs contend the trial court erred when it stated "it was not clear that there was 'equity' at all in 'the project' " and then failed to determine the value of the property.

It is unclear exactly what plaintiffs hope to accomplish by this contention. Apparently, they believe the court was required to award them damages based on the value of the property at the time of their purported dissociation but failed to do so because it could not determine such value.  Plaintiffs again cite Corporations Code section 16701, which requires the court to determine a buyout price of a dissociated partner's interest.  However, as we have explained, there was no dissociation in this matter, and plaintiffs' dissolution and accounting claims were not based upon a withdrawal from the partnership prior to filing suit.  Plaintiffs sought a straightforward dissolution, which the trial court granted.

Plaintiffs quote from *California Lettuce Growers, Inc. v. Union Sugar Co.* (1955) 45 Cal.2d 474, 486-487, where the California Supreme Court said:  " '[W]hen it clearly appears that a party has suffered damage a liberal rule should be applied in allowing a court or a jury to determine the amount, and that, given proof of damage, uncertainty as to the exact amount is no reason for denying all recovery.' "  However, the trial court rejected plaintiffs' breach of contract claim, and plaintiffs have presented no argument on appeal that the court erred in this regard.  The question here is not one of damages for breach of contract but the appropriate dissolution of the partnership.  The court was under no obligation to determine the value of the property under such circumstances.

# V

## *Attorney Fees*

Plaintiffs contend they are entitled to an award of attorney fees under Corporations Code section 16701 for defendants' bad faith failure to dissociate them from the partnership and pay them their share of the partnership value. However, as previously explained, plaintiffs' did not assert a claim based on a failed dissociation from the partnership but instead sought dissolution, which the trial court granted. Plaintiffs therefore are not entitled to relief under the indicated code section.

In her opening brief, Terina contends plaintiffs are entitled to attorney fees under the "tort of another" exception to the American rule. The other plaintiffs join in Terina's arguments on appeal.

"Under the American rule, as a general proposition each party must pay his own attorney fees. This concept is embodied in section 1021 of the Code of Civil Procedure, which provides that each party is to bear his own attorney fees unless a statute or the agreement of the parties provides otherwise." (*Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 504, fn. omitted.) One exception to this rule, however, is "the 'tort of another' or 'third party tort' exception, [which] allows a plaintiff attorney fees if he is required to employ counsel to prosecute or defend an action against a third party because of a tort of the defendant." (*Id.* at p. 505.)

Plaintiffs contend the tort of another exception applies here because the various breaches of fiduciary duty by Judee and Coldwell Banker required plaintiffs to file suit against the Doughertys. However, as we have explained, the trial court correctly concluded plaintiffs failed to establish any claim against the real estate defendants. Hence, their tort of another argument fails at its inception.

19

## VI

### *Claims Against Real Estate Professionals*

Plaintiffs contend the trial court erred in rejecting each of their claims against Judee and Coldwell Banker. Those claims are for breach of fiduciary duty, intentional and negligent misrepresentation and general negligence. The bulk of plaintiffs' arguments regarding the real estate professionals concern their claim for breach of fiduciary duty, which we shall address first.

Plaintiffs assert it is "[u]ncontested" that no partnership was formed until the close of escrow on the property. They cite as support Judee's testimony that, at the time she represented the parties in the purchase of the property, there "wasn't really a partnership" and she was instead representing four individuals. They also cite Glenn's testimony that "technically" no partnership existed until the property was purchased. Thus, they argue, Judee's relationship with plaintiffs from the start was as their personal agent rather than as an agent of the partnership.

The foregoing arguments ignore contrary evidence in the record that the partnership was formed for the purpose of buying property, developing it and selling homes at a profit. The parties entered into a partnership agreement and then went about finding appropriate property to develop. The question of when the partnership was formed is one of law based on the facts and not one based on the opinions of the parties.

At any rate, whether Judee represented the parties as individuals or as members of a partnership is of no import. Either way, she owed the individual partners a duty of care.

Plaintiffs also argue the court erred in placing the burden on them to prove their breach of fiduciary duty claim rather than on the real estate professionals to disprove it. They argue: "Once a fiduciary breach has been established, a rebuttable presumption of reasonable reliance is created subject to being overcome by substantial evidence." Plaintiffs further argue that, once a fiduciary gains an advantage over its principal, a

20

presumption of undue influence arises. According to plaintiffs, "Coldwell Banker's agents gained full advantage as they have full title to the property, which was jointly purchased with the Stevensons."

The foregoing argument presupposes that a breach of fiduciary duty has been established, thereby shifting the burden to defendants to disprove reliance. However, the trial court found to the contrary. The court also found the Doughertys obtained no advantage over the Stevensons by having the latter's names taken off the purchase documents. Regardless of the names on the title, the property was owned by the partnership.

Plaintiffs argue Coldwell Banker breached multiple fiduciary duties owed to the Stevensons. For example, they argue that, during the purchase transaction, Judee delegated virtually all of the transaction to Glenn, who is not a licensed real estate professional. They further argue Coldwell Banker failed to provide the Stevensons with any documentation memorializing their ownership interest in the property and failed to form an LLC as promised. They also assert the Doughertys, acting as agents for Coldwell Banker, breached their fiduciary duty by making unfounded assertions that the Stevensons were not 50 percent partners in the enterprise and by withholding information about the true percentage interests. They further claim a breach of fiduciary duty by virtue of Judee's failure to explain the significance of the addendum by which the Stevensons' names were removed from the purchase documents.

On this last point, plaintiffs contend the expert witness who testified for Coldwell Banker, Patricia Gillette, opined that Judee's failure to advise plaintiffs on the ramifications of signing the addendum removing themselves from the purchase documents was a breach of fiduciary duty. Plaintiffs misread the record. Gillette was asked a hypothetical that assumed Judee had been informed the parties were aware of Dean's tax lien problem but had not yet decided what to do about it. Based on that assumption, Gillette opined Judee had a fiduciary duty to consult with the parties on how

21

to proceed. However, Gillette explained this was contrary to her understanding of the evidence. The evidence showed instead that the parties brought to Judee a fait accompli that they had decided to remove plaintiffs' names from the purchase documents because of the tax liens. Hence, Judee was not presented with a problem to solve but a solution to put into effect. Gillette opined that, under these circumstances, Judee had no obligation to advise plaintiffs regarding the removal of their names from the documents.

Later, Gillette was asked to assume the parties agreed to form an LLC before the close of escrow, and she opined that Judee would have had an obligation to advise them to get it done. However, here again, the hypothetical was contrary to the evidence in the record. As explained above, there was no agreement among the parties to form an LLC before the close of escrow. Gillette opined Judee met the applicable standard of care under the actual facts of the case.

At any rate, plaintiffs' arguments regarding the alleged multiple breaches of fiduciary duty are all premised on an assumption that Judee and Coldwell Banker somehow failed to protect the Stevensons' interests in the purchase of the property. But the trial court found to the contrary. The Stevensons' interests in the property were fully protected despite their names being deleted from the purchase documents. If that were not the case, the court would not have ordered that they share in the dissolution of the partnership. Plaintiffs repeatedly assert the Stevensons' rights were eliminated by the conduct of their fiduciaries. However, the only thing that was eliminated was the Stevensons' names from the title documents. Their equitable interest, by virtue of their participation in the partnership, remained.

Turning now to plaintiffs' misrepresentation claims, the trial court found that, assuming representations were made as alleged, "plaintiffs have not proved by a preponderance of evidence that defendants made the alleged representations of fact without reasonable ground for believing them to be true, or with any intent to induce plaintiffs' reliance on the facts allegedly misrepresented."

22

Plaintiffs contend the record contains substantial evidence satisfying each of the elements of their fraud claim. However, on the issue of whether, at the time defendants made alleged misrepresentations, they believed them to be true, plaintiffs' only citations to the record are to passages whereby Glenn explained he understood the partnership to be one whereby the parties would share profits equally but would share ownership of the property based on their contributions to the purchase. Thus, Glenn believed profits would be split 50/50 but ownership was 75/25.

The foregoing argument appears under the heading, "Stevensons Proved Coldwell Banker had Caused Damage" (bolding omitted) and the subheading, "Stevensons Suffered Damage from Coldwell Bankers' Breaches." However, the argument itself concerns whether *Glenn* committed fraud in his dealings with his partners. That argument is not properly presented under the indicated heading. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Heavenly Valley v. El Dorado County Bd. of Equalization*, *supra*, 84 Cal.App.4th at p. 1346.)

At any rate, assuming plaintiffs are correct that there is substantial evidence of each element of their misrepresentation claims against the Doughertys, or Coldwell Banker for that matter, that is not the appropriate standard for our review. This case comes to us on appeal from a judgment entered by the trial court. In that judgment, the court found plaintiffs failed to prove their misrepresentation claims. On appeal, the burden on plaintiffs is not to show there is sufficient evidence to support their claim but to show there is *not* sufficient evidence to support the opposite. In order to do that, plaintiffs must present all the evidence on the issue, both favorable and unfavorable, and show that the evidence against them is insufficient to support the trial court's conclusion. Plaintiffs have failed to make that showing.

The same goes for plaintiffs' negligence claim. They have not even attempted to show there is not sufficient evidence to support the trial court's rejection of that claim.

23

Plaintiffs do take issue with the trial court's determination that the Doughertys held the property in trust for their benefit. They argue the evidence shows instead that defendants did all they could to sabotage plaintiffs' interest in the property.

Plaintiffs' argument misconstrues the trial court's finding. The court was not making a factual determination regarding the quality of defendants' actions and whether they were beneficial to plaintiffs. The court's finding was that, as a matter of law, the property was being held in trust. In other words, as the holders of legal title to property that was in fact equitably owned by others, defendants were placed in the role of trustees for the benefit of the true owners.

Because the Stevensons' partnership interests in the property was secured, as the trial court found and plaintiffs do not dispute, plaintiffs have no claim against the real estate professionals on their various causes of action. They do not claim any other loss resulting from actions of the real estate professionals. Their dispute with the Doughertys over the appropriate dissolution of the partnership is a matter of internal partnership governance, of which the real estate professionals had no control.

## VII

### *Exclusion of Evidence*

During trial, plaintiffs attempted to introduce into evidence two documents, exhibits 67 and 68-1. Exhibit 67 is a letter dated May 2, 2007, written by counsel for Coldwell Banker, Victoria Naidorf, to counsel for plaintiffs, Karen Goodman. In it, Naidorf denied any liability of her client. Exhibit 68-1 is a letter dated May 7, 2007, from Howard Stagg, counsel for the Doughertys, to Goodman. In that letter, Stagg asserted plaintiffs have no claim against the Doughertys because the Stevensons did not take title to the property, the Stevensons failed to make financial contributions toward the purchase as promised, and the Doughertys were not responsible for the parties' failure to form an LLC. Stagg also discussed his clients' desire not to litigate this matter and to

24

instead work out some other type of resolution. Finally, Stagg demanded mediation of the dispute.

The trial court excluded both documents based on Evidence Code section 1152. Subdivision (a) of that section reads: "Evidence that a person has, in compromise or from humanitarian motives, furnished or offered or promised to furnish money or any other thing, act, or service to another who has sustained or will sustain or claims that he or she has sustained or will sustain loss or damage, as well as any conduct or statements made in negotiation thereof, is inadmissible to prove his or her liability for the loss or damage or any part of it."

Plaintiffs contend exhibits 67 and 68-1 do not qualify for exclusion under Evidence Code section 1152, because they did not contain any offer or promise to compromise plaintiffs' claims. We agree as to exhibit 67, but not exhibit 68-1.

Evidence Code section 1152 is "based on the public policy in favor of the settlement of disputes without litigation and [is] intended to promote candor in settlement negotiations: 'The rule prevents parties from being deterred from making offers of settlement and facilitates the type of candid discussion that may lead to settlement.' " (*Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1475.)

Although exhibit 67 was written by counsel for one party to counsel for the other and expressly states it is a "CONFIDENTIAL SETTLEMENT COMMUNICATION," it is clear from the content the letter was in no way an acknowledgement of responsibility or offer to compromise. After introducing herself as counsel for Coldwell Banker, Naidorf stated: "I believe that there is no basis to claim that Coldwell Banker is in any way responsible for the dispute that has arisen between your clients and Mr. and Mrs. Dougherty. Hopefully the principals can work together through their respective attorneys to reach a prompt and appropriate resolution of this matter. However, if such resolution is not possible, I would urge that no further attempts be made to drag Coldwell Banker into this non-brokerage, personal issue."

25

There is nothing in the foregoing that could be construed as an acknowledgement of responsibility on the part of Coldwell Banker or an offer to compromise plaintiff's claims. Hence, Evidence Code section 1152 would not appear to be applicable. It is not the caption of the letter but its content that is controlling.

On the other hand, it is hard to see any relevance in the document. Plaintiffs argue: "Exhibit 67 clearly shows that Coldwell Banker was dealing in bad faith, as they fully denied all liability for their agent's failures." As we have explained, there is substantial evidence in the record that both Coldwell Banker and its agent met their applicable standard of care under the circumstances presented. It is hard to see how a party is acting in bad faith merely by denying responsibility where no responsibility exists. Thus, any error in excluding exhibit 67 under Evidence Code section 1152 was harmless.

As for exhibit 68-1, that letter reads in part: "Finally, let me confirm that the Doughertys' [*sic*] have no interest in litigating this matter, and have made several proposals to Mr. and Mrs. Stevenson, to return their money to them, or to provide them with payment and a larger percentage of their investment, in an effort to settle and resolve this matter. They obtained and provided your clients with an appraisal of the property, and were prepared to make payment to your clients based on that appraisal value. We understand, however, that your clients declined to accept the value determined by the appraiser, and represented that he [*sic*] was going to engage an independent appraiser to determine the value of the property. Perhaps it would be appropriate to allow the appraisal process to be completed, and then further discussion of resolving these claims, with an unwinding of whatever agreement may or may not have been reached among the parties, with all to go their separate ways."

It is clear from the foregoing that exhibit 68-1 contains settlement discussions. It expresses the Doughertys' willingness to allow the Stevensons some amount as settlement of their claims under the partnership agreement. It further expresses the

26

Doughertys' willingness to use appraisals to determine valuation for purposes of plaintiffs' dissolution claim. Evidence Code section 1152 is clearly applicable.

Plaintiffs nevertheless contend the letter also contains other things relevant to this dispute, such as an acknowledgement that the Stevensons had attempted to dissociate from the partnership and evidence that the Doughertys were misrepresenting the facts. However, the fact the letter may have contained other matter does not detract from the fact it also contained settlement negotiations. Plaintiffs made no offer to redact the objectionable portions of the letter and present the remainder.

Plaintiffs contend they were entitled to present exhibit 68-1 as a response to an earlier letter they sent to the Doughertys that was admitted into evidence. They cite Evidence Code section 356, which reads: "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence."

Plaintiffs did not argue below that exhibit 68-1 was admissible as a response to their earlier letter and made no showing that exhibit 68-1 was necessary to make the earlier letter understood. On the contrary, plaintiffs' questioning regarding exhibits 67 and 68-1 sought to elicit testimony as to plaintiffs' reaction to the exhibits, i.e., that the letters caused them emotional distress. Hence, the trial court was not called upon to rule on whether admission of exhibit 68-1 was necessary to make the earlier letter understood. Plaintiffs have therefore forfeited any such claim.

# VIII

## *Emotional Distress Damages*

Plaintiffs contend they are entitled to emotional distress damages on their various tort and breach of contract claims. However, as we have explained, plaintiffs' claims, other than those for dissolution and an accounting, were properly rejected by the trial court. Hence, their assertion of a right to emotional distress damages is a non-starter.

# IX

## *Nicholas Stevenson*

In his separate opening brief, Nicholas contends the trial court erred in denying him any relief on the complaint. The other plaintiffs have joined in Nicholas's arguments on appeal.

Plaintiffs contend the trial court erred in concluding Nicholas was no more than an investor in the partnership and not a partner. They argue this finding is inconsistent with other findings by the court, ignores the fact that the Doughertys consented to Nicholas becoming a partner in the venture, and is contrary to the law permitting assignment of property interests and causes of action. As we shall explain, all of these arguments are based on fundamental misunderstandings of the law and the findings of the trial court.

Plaintiffs contend the trial court's finding that Nicholas was no more than an investor is inconsistent with another finding that he was a "straw purchaser" for his parents and also inconsistent with the ultimate determination that Nicholas did not prevail on any cause of action. The court made no finding that Nicholas was a "straw purchaser." The portion of the court's statement of decision cited for this assertion reads: "Dean delivered checks totaling $48,500 to Coldwell Banker towards the close of escrow, including checks from Nicholas. He provided another check for $1,500, bringing the total amount paid by the Stevensons towards the purchase to $50,000. . . . The Doughertys contributed $155,000 towards the $205,000 purchase price. The Doughertys'

funds, and the funds contributed on behalf of Dean and Terina, were placed in escrow together and, as partnership funds, were used to consummate the purchase of the Virginiatown property."

The court found the Stevensons contributed $50,000 toward the purchase of the property and a portion of those funds came from Nicholas. In effect, Nicholas contributed money to his parents, either as a gift or a loan, and his parents used those funds in the purchase of the property. This is not inconsistent with the court's determination that Nicholas was an investor and not a partner.

Plaintiffs next take issue with the court's statement: "There is no evidence to support that the Doughertys consented to Nicholas becoming a partner, either expressly or impliedly." Plaintiffs argue this is inconsistent with the provision of the purchase offer that it could be assigned to others, which gave the parties the freedom to bring others into the deal. According to plaintiffs, "the Doughertys, in fact, expressly consented to Nicholas becoming a co-investor, even if not a partner."

It is one thing for the Doughertys to expressly agree that others could be brought into the deal and quite another for them to agree on a particular assignee. There is nothing to suggest the provision permitting assignees was a blanket authorization for any partner to bring in any other party of his or her choosing. Plaintiffs cite nothing to suggest the partners, including the Doughertys, agreed to assign a portion of the property purchase to Nicholas.

Plaintiffs nevertheless assert the trial court "completely blew it" in concluding Nicholas was an investor rather than an equity purchaser. Plaintiffs cite that portion of the escrow instruction, signed by Judee, which states the funds being deposited "are not loan proceeds." Plaintiffs assert this is contrary to the court's finding that Nicholas had made a loan rather than an investment.

Plaintiffs misconstrue the escrow instructions. The document in question begins: "I, the undersigned depositor, hand you herewith checks in the amount of $48,500

29

payable to North American Title Company." It then states: "These funds are not loan proceeds and are to be deposited immediately in this escrow for the account of Glenn Dougherty and Judee Dougherty, principal(s)." The document is signed by Dean as the depositor.

Because the declaration was signed by Dean, it is his assertion that the funds are not loan proceeds. In effect, Dean was assuring all interested parties that the funds belonged to him and had not been obtained by way of a loan for which the lender might be asserting a security interest in the property. Whether in fact Dean had obtained the funds by way of a loan from Nicholas is of no moment. This is a matter between Dean and Nicholas. For all that appears, the funds were given to Dean with no strings attached.

The trial court did not find that Nicholas made a loan directly to the partnership to facilitate purchase of the property. There is nothing in the record to suggest the Doughertys agreed to such a loan. Rather, the Stevensons were required to come up with $50,000 toward the purchase and they arranged for Nicholas to provide *them* a portion of that money. The Stevensons then took that money and contributed it to the partnership. Thus, Nicholas was a lender to his parents, not the partnership. Hence, he has no claim against the partnership.

Plaintiffs also contend the trial court ignored a fundamental right of property ownership, the right to assign all or a portion of the property to another. They argue the Stevensons had a right to assign their share of the property to others, with or without consent from the other property owners, and they assigned a portion of their interest in the property to Nicholas. In fact, plaintiffs argue, not only did the Stevensons have the right to assign a portion of their interest in the property to Nicholas, they also had the right to assign their causes of action to recover that interest.

Plaintiffs misconstrue the nature of the underlying transaction. The parties here did not purchase the property as individuals but as a partnership. Thus, the individuals did not each own a portion of the property, which could be freely assigned to others. The

property was owned by the partnership. As such, the individual partners had no right to assign any portion of the property. Only the partnership as a whole could do so. And, contrary to plaintiffs assertions, the fact the court found the Stevensons had no right to transfer a portion of the property to Nicholas is not inconsistent with the further finding that the Stevensons had not lost any rights by virtue of the manner in which title to the property was taken. The Stevensons retained their *partnership* interest in the property. That interest is no different than if their names had been included on the title.

Plaintiffs contend that, by virtue of Nicholas's contribution of funds to the purchase, he became an assignee of the Stevensons under the terms of the purchase offer and, as such, Judee owed him a fiduciary duty. However, as explained above, Nicholas did not contribute funds to the partnership but to the Stevensons and did not become an assignee of a partnership interest. Furthermore, we conclude the trial court did not err in rejecting plaintiffs' breach of fiduciary duty claim. Hence, it does not matter whether Judee owed Nicholas a fiduciary duty.

Plaintiffs nevertheless contend the proper burden of proof for a fiduciary is a rebuttable presumption and, hence, the trial court should have concluded Nicholas became a partner, because there is no evidence the Doughertys failed to consent to him becoming a partner. This argument obviously puts the cart before the horse. Assuming a rebuttable presumption arises against a fiduciary, the court must first find a fiduciary relationship exists. Here, plaintiffs attempt to use the rebuttable presumption to prove a fiduciary relationship existed, thereby giving rise to the rebuttable presumption.

As their final argument, plaintiffs again assert the trial court erred in finding that Nicholas did not become a partner by virtue of his having contributed $42,000 to the partnership for purchase of the property. However, as previously explained, the trial court found Nicholas did not contribute to the partnership but to the Stevensons, who in turn contributed those funds to the partnership for purchase of the property. Furthermore, one does not become a partner in an enterprise merely by contributing money to it. There

31

must be an intent that the parties are entering into a partnership.  The record supports the trial court's conclusion that no such intent existed here.  Whatever the Stevensons may have thought, there is no evidence that the parties ever discussed Nicholas becoming a member of their partnership.

## DISPOSITION

The judgment is affirmed.  Defendants, both the Doughertys and Coldwell Banker, are entitled to costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


      HULL      , J.


We concur:


     NICHOLSON    , Acting P. J.


     DUARTE     , J.